**Jessie J. CANADAY, Appellant,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.**

**No. 10233.**

United States Court of Appeals Fourth Circuit.

Argued March 10, 1966.

Decided Sept. 28, 1966.

Clay S. Crouse, Beckley, W. Va. (E. Carl Meadows, Jr., Beckley, W. Va., on the brief), for appellant.

Jack H. Weiner, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Kathryn H. Baldwin, Atty., Dept. of Justice, and Milton J. Ferguson, U. S. Atty., on the brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and CRAVEN, District Judge.

BOREMAN, Circuit Judge.

Jessie J. Canaday, appellant, filed an application with the Social Security Administration on January 2, 1963, to establish a period of disability and for disability insurance benefits under 42 U.S. C.A. §§ 416(i) and 423. The hearing examiner determined that Canaday was not "disabled" and this determination became the final decision of the Secretary of Health, Education and Welfare. On petition for review, the District Court upheld the Secretary's decision, finding substantial supporting evidence. We affirm.

Canaday, who lives near Beckley, West Virginia, was forty years of age when he filed his application. His work experience consisted primarily of operating a jack-hammer in the coal mining and construction industries. He had not advanced beyond the fourth grade in school. His application fixes July of 1962 as

the onset of his disability. The ailments which he claims as disabling are silicosis and a back condition due to injury.

It appears that Canaday has had silicosis for some years. The Silicosis Medical Board of the West Virginia Workmen's Compensation Commission determined on March 23, 1962, that he had a fifteen per cent pulmonary disability as a result of that disease.

Claimant's difficulties with his back stem from an accident which occurred on June 8, 1962. While at work, he fell some ten or twelve feet and struck his spine upon a sledge hammer which was lying on the ground. He continued to work the remainder of that day. The following day, he visited the hospital, and X-rays taken there revealed a fracture of the third transverse process, left side. He was treated with pain relieving drugs and was provided with a supporting rib belt. After being off approximately eight weeks, he returned to work for the same contractor in whose employ he had been injured and remained on the job for several months. During this time he admittedly did such work as sweeping out his employer's shop and painting. He was laid off in October of 1962 along with nine other men because of a lack of work. All of the laid-off employees, except claimant, were later recalled.

▮▮ In order to establish his right to disability benefits and a disability freeze, a claimant must show that he is unable "to engage in any substantial gainful activity" because of physical or mental defects. 42 U.S.C.A. §§ 416(i) (1) (A) and 423(c) (2) (A) (Supp. 1965). It is undisputed that these infirmities have to some degree restricted claimant's ability to work. The hearing examiner found, however, that he had the residual capacity to do at least light or sedentary work. This conclusion is adequately supported by the record. In fact, there is evidence that claimant was capable of doing more than what might reasonably be termed "light" work.

The Secretary's decision is consistent with the opinions of the medical experts who examined the claimant. There is no medical testimony or opinion that he was totally disabled. Dr. Harold E. Harvey, an internal medicine specialist who examined claimant on February 13, 1963, concluded that he was capable of work which did not require more than moderate physical exertion and which did not expose him to silica dust. Dr. Harold E. Swart, on the basis of an April 12, 1963, examination, formed the opinion that claimant's back injury rendered him permanently only ten per cent disabled. Dr. John M. Daniel examined claimant on February 20, 1964, with respect to both his pulmonary and back difficulties. It was his opinion that claimant should not engage in *heavy* or *moderately heavy* manual labor requiring repeated lifting, bending, squatting, climbing, or prolonged walking.

Even stronger support for the Secretary's finding is provided by claimant's vocational activities from the date when disability allegedly occurred to the time of the hearing. As stated, Canaday was able to return to work after July of 1962 for a period of several months and to perform such tasks as sweeping and painting. Following his layoff in October of 1962 claimant was unemployed until May of 1963. At that time he began working in West Virginia's Aid to Dependent Children Program for unemployed fathers. It appears that he was still so employed after the hearing on his application, held on March 23, 1964.

The A.D.C. program, which provides "made" work for unemployed fathers, compensated claimant at the hourly rate of $1.00. Such employee is permitted to work a maximum of 165 hours each month. Canaday testified at the hearing that he had not been able to work regularly on the State project because of his afflictions. He further testified that he performed only light tasks, such as attending brush fires, sweeping, and puting up signs, and that he received considerable assistance from solicitous fellow employees. His testimony was corroborated by one of those fellow employees.

Contradictory evidence is furnished by the report of a Social Security Administration field representative concerning his contact with T. H. Calvert, supervisor of the A.D.C. employees, on April 14, 1964. This report was received in evidence with claimant's consent. Calvert told the contact representative that claimant had been assigned by the Program to the tasks of cleaning out ditches and cutting brush along the highway; that he always "put in a good day's work"; and that he had not complained of being ill or disabled. Calvert added that the A.D.C. Program was not intended to provide employment for *disabled* fathers, but only for those who cannot find work due to economic conditions; that he would not have anyone on the job who was disabled; and that when he found any employee unable to do the work because of illness or physical impairments, he referred that individual to the Department of Welfare for assignment under a program specifically designed for the disabled. With respect to Canaday's alleged frequent absenteeism, Calvert reported that from January of 1964 to the date of the contact his records revealed that claimant had missed only two work days in January, two work days in February, three work days in March, and five work days to that point in April. Calvert stated that a worker must have a written excuse from a doctor if he is to receive pay when absent due to illness. He was unable to find any such excuses for claimant's absences in his files.

The hearing examiner accepted Calvert's statements as reported and reached the following conclusion:

"In view of the fact that Mr. Calvert's statements are based on project records and in view of the fact that there is in West Virginia a specific program for aid to disabled persons, it is the opinion of the hearing examiner Mr. Calvert's statement on this point are (sic) the more reliable and that claimant's work in the Aid to Dependent Children's project constitutes evidence of his ability to engage in light or moderately heavy physical activity on a reasonably regular basis."

A recent decision of this court, while somewhat stronger on its facts than the instant case, points to the relevancy and persuasiveness of the evidence with respect to such work activities. In Simmons v. Celebrezze, 4 Cir., 362 F.2d 753, 755 (1966), the claimant was obliged to prove himself disabled on or before September 30, 1962, since his coverage expired after that date. It was established that the claimant had, from April 19, 1960, to April 6, 1962, worked as a laborer, cutting and gathering brush along the highway, in a program conducted by West Virginia's Rehabilitation Division. From April 1964, through August of the same year, the claimant had also supervised a pulpwood enterprise involving the cutting and delivery of trees grown on land owned by him. Also, in 1963 and 1964 he was engaged in buying and selling cows, occasionally milking them himself. Speaking through Judge Sobeloff, the court said:

"* * * This concrete showing compels affirmance of the Secretary's conclusion that the claimant's disabilities are not of such severity as to prevent him from engaging in substantial gainful activity, despite the fact that a contrary conclusion may also be reasonable. The case is, therefore, quite different from those where the Secretary, in denying benefits, relies on abstractions based on the Department of Labor's 'Dictionary of Occupational Titles' to support his determination that jobs are generally available to 'average' persons of the claimant's general class. * * *"

Affirmed.