**John J. LEFTWICH, Appellee,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Appellant.**

**No. 11015.**

United States Court of Appeals
Fourth Circuit.

Argued March 7, 1967.

Decided May 1, 1967.

William Kanter, Atty., Dept. of Justice (Barefoot Sanders, Asst. Atty. Gen., Kathryn H. Baldwin, Atty., Dept. of Justice and Milton J. Ferguson, U. S. Atty., on brief), for appellant.

Clay S. Crouse, Beckley, W. Va. (E. Carl Meadows, Jr., Beckley, W. Va., on brief), for appellee.

Before SOBELOFF and CRAVEN, Circuit Judges, and HARVEY, District Judge.

CRAVEN, Circuit Judge.

In this unusual social security case, claimant Leftwich was denied disability benefits at the administrative level largely because he has the admirable motivation to insist upon working for the support of his family despite physical inability to do so. There is more logic than common sense in such a result, and there is irony not intended, we think, by the Congress. We affirm the decision of the district court granting Leftwich a period of disability and disability insurance benefits.

█ We have carefully reexamined the record as a whole before deciding that the decision of the Hearing Examiner and the Appeals Council is not supported by substantial evidence. "The substantiality of the evidence to support the Secretary's findings is the issue before each court." Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), citing Farley v. Celebrezze, 315 F.2d 704 (3d Cir. 1963), and Ward v. Celebrezze, 311 F.2d 115 (5th Cir. 1962).

█ Although we review the same record and make the same determination as made in the district court, "[i]t should hardly require articulation to note that an appellate court gives great weight both to the reasoning and conclusions of the district courts." Farley v. Celebrezze, supra, 315 F.2d at 705 n. 3. There is here no inconsistency: we are influenced by the decision of the district court, but we are not bound by it. See Roberson v. Ribicoff, 299 F.2d 761, 763 (6th Cir. 1962); Flemming v. Booker, 283 F.2d 321, 322 n. 4 (5th Cir. 1960).

In the Hearing Examiner's decision appears the following:

"The Hearing Examiner will not attempt to describe in detail each of the medical reports relative to the claimant or to describe the two hearings previously referred to,[1] since the Hearing Examiner feels that the primary issue to be resolved herein is whether or not the claimant's present job as a dishwasher at the Pinecrest Sanitarium, which he has been doing since around June 1960 to the present, constitutes the ability to engage in substantial gainful activity within the meaning of the disability provisions of the Social Security Act and the regulations implementing such provisions."

Consistent with that position, the hearing held at Beckley, West Virginia, on September 7, 1965, lasted exactly fifteen minutes. At that hearing, the Hearing Examiner said:

"It would appear to the Hearing Examiner that the reason the claimant's application was denied was because of his work at the Pinecrest Sanitarium as a dishwasher and they apparently considered this as the ability to engage in substantial gainful activity."

We agree with the Hearing Examiner that it is unnecessary to narrate in great detail the medical history of claimant. Only a small part of it will make it crystal clear that but for the question posed by his minimal employment he would unquestionably have been found unable to engage in substantial gainful employment.

### Work History and Disabilities

█ Leftwich is now fifty-two years old. Although he has a high school education, his entire work history consisted of manual labor in the coal mines, where he suffered two severe back injuries, one in 1951 and another in 1953. In the first accident he suffered a fractured right clavicle, fractures of the ribs, and injuries to the lower back. In the later accident he suffered a ruptured disc, which was removed by surgery in 1954.[2] Since that year, he has suffered from spondylolisthesis. He also has a congenital marked scoliosis (curvature) of the spine. Flexion of the spine is limited to two-thirds and side bending and ex-

1. These were Workmen's Compensation hearings.

2. Despite his serious injuries, claimant worked in the mines (after periods of recuperation) until in 1959 he was rejected by the company doctor.

tension nil. As of 1963, Dr. Stallard reported that claimant's condition had grown progressively worse and that claimant could not stoop, bend, or lift. In a 1964 report, Dr. Raub concluded that the claimant was "quite disabled" and could not return to the mines.

The Hearing Examiner noted in his decision that one doctor "further commented that under modern screening processes and pre-employment examinations the claimant is barred from securing employment * * *."

Typical of medical opinion in the file is that of Dr. C. W. Stallard, who concluded as of May 12, 1961, "this patient is totally and permanently disabled from work."

In addition to the extremely limiting physical disability, Leftwich suffers from psychoneurotic symptoms which the neuropsychiatrist has predicted will continue "unabated". This condition was described as "moderately severe" and sufficient to make him a poor candidate for rehabilitative retraining.

Despite the foregoing, and much more, the Hearing Examiner concluded "that the objective medical evidence of record establishes that the claimant has suffered moderate impairments to his musculoskeltal [sic] system that would preclude him from engaging in any work requiring heavy manual labor or lifting, bending, stooping, etc. But the Hearing Examiner does not feel the objective medical evidence of record establishes that the residuals of the claimant's impairments to his musculoskeltal [sic] system would preclude him from engaging in all substantial gainful activity, particularly of a light or moderate type, and he so finds." We think it apparent that the Hearing Examiner and the Appeals Council accorded too much weight to

### The Dishwashing Job.

Much of the record and the Hearing Examiner's decision is devoted to consideration of claimant's having worked for approximately the past five years as a dishwasher at Pinecrest Sanitarium. Claimant says in explanation of his employment that his job is rather easy and that he is not pushed by his supervisor. He also says, and it rings true when read with the rest of the record, that he works days when he does not feel like it for the sake of his family. He has nine children dependent upon him. By way of corroboration, claimant has repeatedly advised doctors who examined him that he endures pain while he works for the sake of making a living for his family, that he has pain if he sits more than ten minutes, and that his back hurts all the time while he is standing.

Claimant started his dishwashing job on May 25, 1960. He put in ten hours a day at first, 240 hours a month, and earned $130.00 a month. As of 1965, his work day was eight hours, totaling 184 hours per month, for which he was paid $150.00. Although he is present at the place of work for an eight-hour day, he actually works only four to five hours per day. He washes dishes by the use of a dishwashing machine and scrubs aluminum pots by hand. He does no lifting. Claimant's supervisor testified that he was not capable of doing anything but dishwashing and pot washing, and that if he were, she would have assigned other duties to him. She disclosed that he could not have obtained his job without political influence and stated that a lot of employees at the sanitarium are persons who could not handle jobs in private industry.

The Hearing Examiner conceded that claimant "may well have gotten his job on the basis of politics," but he felt that claimant's position was not a "made" job involving minimal or trifling tasks which make little or no demand on the individual and are of little or no utility to his employer or to the operation of a business, and refused to apply the exclusion in the Regulations.[3] In making

---

3. The exclusion reads as follows:
   " 'Made work', that is, work involving the performance of minimal or trifling

duties which make little or no demand on the individual and are of little or no utility to his employer, or to the opera-

this determination, the Hearing Examiner adverted to Hanes v. Celebrezze, 337 F.2d 209 (4th Cir. 1964), and acknowledged that counsel for claimant urged its similarity to the instant case. The Hearing Examiner rejected the analogy in these words:

"The Hearing Examiner also invites attention to the fact that the Administration does not acquiesce in either the results or the opinions expressed by the Fourth Circuit Court of Appeals in the *Hanes* case, and that it does not feel that the decision in the *Hanes* case is binding on it with respect to any other disability case."

We recognize that we are neither final nor infallible. However, we respectfully suggest that Hearing Examiners in this circuit may with some profit consider our prior decisions to see whether or not they have value as precedents.

In *Hanes*, supra, this court held that evidence of claimant's earnings of $125.00 per month as a building custodian did not by itself and in view of other evidence constitute substantial evidence to support the Secretary's decision that claimant was disqualified for benefits due to ability to engage in substantial gainful activity. Judge Boreman, writing for the court, expressed the view that "the court below erred in ascribing controlling significance to the evidence of claimant's earnings." The decision of the district court affirming denial of benefits by the Secretary was reversed.

In Flemming v. Booker, 283 F.2d 321 (5th Cir. 1960), despite evidence that the claimant averaged five days a week work at a used car lot for which he was paid $15.00 or $20.00 a week, it was held that, nevertheless, the claimant had established his inability to engage in any *substantial* gainful activity. Judge Rives, speaking for the court, thought it not inappropriate to borrow tests of

disability from other areas of the law. The quotations relied upon by the Fifth Circuit are worthy of reproduction here:

"In Berry v. United States, 1941, 312 U.S. 450, 455, 456, 61 S.Ct. 637, 639, 85 L.Ed. 945, Mr. Justice Black, speaking for a unanimous Court, said:

'It was not necessary that petitioner be bedridden, wholly helpless, or that he should abandon every possible effort to work in order for the jury to find that he was totally and permanently disabled. It cannot be doubted that if petitioner had refrained from trying to do any work at all, and the same evidence of physical impairment which appears in this record had been offered, a jury could have properly found him totally and permanently disabled. And the jury could have found that his efforts to work—all of which sooner or later resulted in failure— were made not because of his ability to work but because of his unwillingness to live a life of idleness, even though totally and permanently disabled within the meaning of his policies.'

"In Mabry v. Travelers Ins. Co., 5 Cir., 1952, 193 F.2d 497, 498, Judge Holmes, for [the Fifth] Circuit, said:

'Pinched by poverty, beset by adversity, driven by necessity, one may work to keep the wolf away from the door though not physically able to work; and, under the law in this case, the fact that the woman worked to earn her living did not prevent a jury from finding, from the evidence before it, that she was totally and permanently disabled even while working.' " 283 F.2d at 324.

The similarity of Leftwich's situation to those of claimants in *Hanes* and *Booker* is apparent.[4] No two cases are, of course, exactly alike. But Hearing Examiners may not quit thinking when a

tion of a business, if self-employed, does not demonstrate ability to engage in substantial gainful activity." 20 C.F.R. § 404.1532.

4. But cf. Canady v. Celebrezze, 367 F.2d 486 (4th Cir.1966); Simmons v. Celebrezze, 362 F.2d 753 (4th Cir.1966); Brown v. Celebrezze, 347 F.2d 227 (4th Cir.1965).

claimant's earnings reach a magic mark.[5] The test is not whether Leftwich by willpower can stay on his feet yet another day—but whether objectively and in the totality of circumstances, including especially his afflictions, he is disabled within the meaning of the Social Security Act. Substantial medical evidence establishes that claimant was totally and permanently disabled. In spite of such disablement, he chose to work every day to support his family. The statute defines disability as an "inability to engage in any substantial gainful activity." In this case, the emphasis properly is on *inability*. We think the Congress did not intend to exclude from the benefits of the Act those disabled persons who because of character and a sense of responsibility for their dependents are most deserving.

Affirmed.

---

5. 20 C.F.R. § 404.1534 provides in pertinent part:

"(b) *Earnings at a monthly rate in excess of $100.* An individual's earnings from work activities averaging in excess of $100 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity in the absence of evidence to the contrary."