**Raymond A. YARBOROUGH, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 723.**

United States District Court
E. D. North Carolina,
New Bern Division.

April 26, 1968.

Douglas P. Connor, Mount Olive, N. C., for plaintiff.

Robert H. Cowen, U. S. Atty., by Larry G. Ford, Asst. U. S. Atty., for defendant.

OPINION and ORDER

LARKINS, District Judge:

This action was brought under the provisions of Section 205(g) of the So-

cial Security Act, as amended, 42 U.S. C.A. § 405(g), to obtain judicial review of a final decision of the Secretary of Health, Education and Welfare in which the Appeals Council affirmed, as supplemented, a decision of the Hearing Examiner holding that plaintiff's entitlement to a period of disability and disability insurance benefits had terminated.

## SUMMARY OF ADMINISTRATIVE ACTION

On February 26, 1962, Raymond A. Yarborough filed an application for the establishment of a period of disability and disability insurance benefits (Tr. 68–71) under the provisions of Section 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C.A. §§ 416(i), 423. He alleged that he had become unable to work on July 18, 1961, because of "arthritis, flat feet, (and) rheumatic heart." His application was allowed by Certificate of Social Insurance Award dated July 10, 1962 (Tr. 79), plaintiff being awarded a period of disability from July 18, 1961, and disability insurance benefits effective February 1962 (beginning after the required six months waiting period). Plaintiff's wife and child were also awarded benefits effective February 1962 (Tr. 79). In August of 1963 plaintiff was examined for the purpose of determining continuing disability (Tr. 133–139) and was notified on September 13, 1963, that evidence in his claim had been reviewed and it was found that he was still disabled (Tr. 82); he was advised to notify the Social Security Administration of any improvement in his condition or change in his work status.

On February 9, 1965, plaintiff was interviewed in connection with another continuing disability investigation (Tr. 105–106), and it was learned that he had "bought a self-service laundrymat [sic]"; subsequently, on March 18, 1965, he was notified that benefit payments had been stopped because "earnings have recently been credited to your social security account" (Tr. 83). Thereafter, on June 22, 1965, Yarborough was advised that since evidence in his case showed that he "became able to do substantial gainful work in September 1964," the last disability benefit check to which he was entitled was for the month of November 1964 and, accordingly, that payments for the months of December 1964, January 1965, and February 1965 were incorrectly made and should be refunded [1] (Tr. 84–85). Plaintiff requested, on July 1, 1965, a reconsideration of the termination of his benefits on the grounds that he was not working in the business which he owned (Tr. 86). The termination decision was confirmed, however, on October 19, 1965, plaintiff being advised that as a self-employed laundromat operator he had demonstrated his ability to engage in substantial gainful activity (Tr. 90–91). On that same date, plaintiff filed a request for hearing (Tr. 27) and on February 9, 1966, a hearing was held before Hearing Examiner J. C. Goodwin (Tr. 28–64). In his decision of March 14, 1966, the Hearing Examiner held (Tr. 13–24) that plaintiff's disability ceased in September 1964, that his entitlement to a period of disability terminated as of November 30, 1964, that his entitlement to disability insurance benefits ended with the month of November 1964, and that recovery of the overpayment in the sum of $726.00 was not precluded. Thereafter, plaintiff's request for review of the Hearing Examiner's decision was granted by the Appeals Council (Tr. 10, 11). After development and receipt of additional evidence (Tr. 8, 9, 67), the Appeals Council, on March

---

1. Plaintiff was advised, however, that "[y]ou may not have to pay back the money if both the following are true:
    "1. The overpayment was made to you throt_h no fault of your own.
    "2. Paying it back would keep you from meeting your ordinary and necessary living expenses, or would be unfair for some other reason, that is, by reason of the overpayment you gave up a valuable right or changed your position for the worse." (Tr. 84).

24, 1967, rendered the "final decision" of the Secretary (Tr. 2–7), affirming, as supplemented, the Hearing Examiner's decision of March 14, 1966.[2]

This action, seeking judicial review of the final decision of the Secretary, was commenced on May 11, 1967, following which the parties cross-moved for summary judgment.

## ISSUES BELOW AND STANDARD FOR JUDICIAL REVIEW

The issues for decision below, as stated by the Appeals Council, were as follows:

"* * * whether the claimant continues to be entitled to a period of disability and to disability insurance benefits. The specific issues are whether the claimant's 'disability' has ceased, and if so, as of what date. This, in turn, depends on whether the claimant's work activity has demonstrated a regained ability to engage in substantial gainful activity.

"If it is found that the claimant's disability has ceased, an additional issue is presented as to whether there has been an overpayment; and if so, whether recovery of the overpayment may be waived. This depends on whether the claimant was without fault in accepting any payment incorrectly made, and if so, whether recovery of the overpayment would defeat the purpose of title II of the Act, or be against equity and good conscience." (Tr. 2.)

Central to the determination below, of course, were the statutory and regulatory guidelines which were applied in reaching a decision as to the primary question of whether plaintiff's "disability" had ceased. At the time of the awarding of a period of disability to the plaintiff (July 18, 1961), and of the effective date of the disability insurance benefits (February 1962), as well as the date on which Yarborough was notified that benefit payments had been stopped (March 18, 1965), the term "disability" was defined in 42 U.S.C.A. § 423(c) (2) (Disability insurance benefits) as:

"* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

A like definition appeared in 42 U.S. C.A. § 416(i) (1) (A) (period of disability).[3] As to cessation of the disability, 42 U.S.C.A. U.S.C.A. § 425 provides that if the Secretary believes that an individual has ceased to be under a disability, benefits may be suspended until it is determined whether or not the disability has ceased. Section 404.1539(b) of Regulation No. 4 of the Social Security Administration, 20 C.F.R. 404.1539(b), promulgated pursuant to 42 U.S.C.A. § 405 (a), provides that a claimant's "* * * 'disability' shall be found to have ceased in * * * [t]he month in which the individual has regained his ability to engage in substantial gainful activity * * *." As has been noted, the Secretary, having found that plaintiff was disabled within the meaning of the definition in 42 U.S.C.A. § 423(c) (2), subsequently found that the disability had ceased, under the regulation in 20 C.F.R.

2. The Appeals Council "[a]fter careful consideration of the entire evidence of record," made the following findings:
  "1. The evidence shows no significant change in the claimant's medically determined impairments.
  2. In spite of his impairments, the claimant has demonstrated an ability to engage in substantial gainful activity.
  3. The claimant's 'disability' ceased in September 1964.
  4. The claimant's period of disability ended November 30, 1964, and his entitlement to disability insurance benefits ended with the month of November 1964.
  5. The claimant and his family received an overpayment for the months of December 1964 through February 1965.
  6. The claimant was not without fault in causing the overpayment." (Tr. 6.)

3. For subsequent amendatory provisions concerning "disability" and their bearing on this action, see note 11 infra, and accompanying text.

404.1539(b), although " * * * the claimant's impairments are essentially unchanged from those reported at the time he was initially determined to be under a 'disability' " (Tr. 4). The problem, then, is determining what constitutes a regained ability to engage in substantial gainful activity and the issue before this Court is whether the determination of the Secretary that Raymond Yarborough had demonstrated such a regained ability is supported by substantial evidence. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir., 1964), citing Farley v. Celebrezze, 315 F.2d 704 (3rd Cir., 1963, and Ward v. Celebrezze, 311 F.2d 115 (5th Cir., 1962). In Thomas v. Celebrezze, supra, the United States Court of Appeals for the Fourth Circuit, in an opinion by Judge Sobeloff, set out very clearly a standard for judicial review by which the courts of this circuit may be guided:

> "The prescribed standard of review, found in section 205(g) of the Act, 42 U.S.C.A. § 405(g), is as follows: ' * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *.' Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Boyd v. Folsom, 257 F.2d 778 (3rd Cir. 1958) * * * if * * * reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are * * * bound to decide against the Secretary. * * * In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision 'with or without remanding the cause for a rehearing.' 42 U.S.C.A. § 405(g)."

The Court has considered the briefs in support of the cross-motions for summary judgment and has reviewed the entire record.

## WORK HISTORY AND DISABILITIES

Raymond Yarborough is now fifty-eight years old. He has a sixth or seventh grade education (Tr. 39) and his work history indicates that prior to the onset of his disability, his employment had consisted of nearly twenty-three years service as a crane operator at a Newport News shipyard (Tr. 40, 41, 102). In February of 1962, at the time of his application for a period of disability and disability insurance benefits, plaintiff stated that his condition, which had bothered him for five or six years and had progressively worsened during that time, consisted of pain between his shoulders and such pain in his feet, hands and wrists that he could not handle the controls on the crane (Tr. 102). He was finally forced by his condition to stop work, which he did on July 18, 1961.

Several medical reports were considered prior to the original disability allowance. Diagnoses included: polyarthritis; pes planus, third degree (flat feet), with acute and chronic foot strain; rheumatic heart disease with aortic insufficiency; chronic prostatitis with prostatic calculi; and chronic anxiety state, severe, with many somatic complaints and rather marked depression. (Tr. 116, 124). Dr. J. W. Carney concluded on February 28, 1962 that Yarborough was disabled (Tr. 117). Dr. William A. Read noted in a report dated May 9, 1962:

> "This man has a severe problem with his feet which is disabling for work

necessitating standing and walking. The heart condition is not disabling, nor is there any evidence of renal insuffficiency. Due to the pain in the feet and legs, and possibly to other factors, he has gradually over the years become more tense and anxious and depressed and this is now a large factor in his disability.

"It is my opinion that he is totally dis-. abled at the present time but that permanent disability would require evaluation of his psychiatric status." (Tr. 124.)

Accordingly, plaintiff was examined by Wendell J. Pile, M.D., Medical Director of the Bayberry Psychiatric Hospital, Hampton, Virginia, who concluded in a June 7, 1962, letter:

"I feel that we are dealing here basically with a person who has been rather chronically depressed and yet one who has never really had any psychiatric treatment for depression. Psychological evaluation may be helpful in determining his prognosis, which I would gather to be rather poor on this clinical evaluation.

"My recommendation would be psychiatric treatment, * * * and if that is unsuccessful he ought to be considered chronically ill and that he would not be able to work productively at any vocation." (Tr. 130, 131.)

Upon this medical evidence, it was determined that plaintiff was entitled to a period of disability and disability insurance benefits, and accordingly, he was issued the Certificate of Social Insurance Award.

Subsequently, in August of 1963, Yarborough was re-examined by Dr. Read, who stated in his report:

"It is my opinion that the heart disease has progressed since the last examination in spite of the normal heart size and normal electrocardiogram. It is not incapacitating for a sedentery

[sic] type of work. The appearance of the feet fully justifies this man having considerable pain on standing or walking. With strong motivation and discipline it might be possible for him to engage in gainful occupation in spite of this. However, he has become quite depressed and anxious over his condition and no further improvement can be expected at this time and after all these years. He is permanently and totally disabled." (Tr. 134.)

This was the posture of the medical evidence when, on September 13, 1963, plaintiff was informed that he was still disabled; this was also the posture of the medical evidence when, on March 14, 1966, he was informed (by the decision of the Hearing Examiner supporting the prior termination) that his disability had ceased. In other words, the medical evidence considered by the Hearing Examiner was the identical evidence upon which Yarborough had been declared disabled and "still disabled." His evaluation:

"There is no question that the medical evidence in this case shows that claimant has impairments which caused him to stop working at his usual occupation * * * and by virtue of these impairments claimant was found to be under a 'disability' within the meaning of the Social Security Act. Consequently, any further evaluation of the medical evidence is not considered necessary especially since there seems to be no substantial conflict in that evidence. The report of the last medical examination noted that claimant's heart condition was not incapacitating for a sedentary type of work and although the appearance of his feet fully justified his having considerable pain on standing and walking, with strong motivation and discipline it might be possible for him to engage in gainful occupation in spite of this." [4] (Tr. 20.)

4. It should be noted that the Hearing Examiner did not make a finding with regard to plaintiff's ability to engage in sedentary work, nor as to what, if any, employment opportunities consistent with his ability, education, background and experience were actually available.

The Appeals Council sought and received additional medical evidence. Consultative examinations were performed by Dr. Prescott B. Spigner, Jr., an orthopedic surgeon, and Dr. Louis D. Hayman, Jr., an internist. In their reports (Tr. 141–142, 144–155), " * * * the claimant's musculoskeletal and cardiovascular impairments were disclosed to be at essentially the same level as when reported previously (when he was determined to be under a 'disability.') In this regard, no significant deterioration or, for that matter improvement, in the claimant's condition was revealed, nor was there any indication of an additional impairment. * * * Therefore, the Appeals Council must conclude that the claimant's impairments are essentially unchanged from those reported at the time he was initially determined to be under a 'disability.' " (Tr. 4.) Thus it is quite clear, as the government points out on page ten of its brief, that the benefits were terminated " * * * because of (Yarborough's) self-employment income from the operation of a laundromat, not on the basis of an improvement in his physical and/or mental condition."

## THE LAUNDROMAT

In late 1963 or early 1964, plaintiff and his family moved from the Hampton-Newport News, Virginia, area to the Jacksonville, North Carolina, area (Tr. 18, 42). At approximately that time, plaintiff went into the coin operated laundry business as a partner with his brother-in-law, each having put up $8,000. (Tr. 18, 54) with the balance of the purchase price financed through a bank loan (Tr. 18, 19). Subsequently the brother-in-law sold out his interest to the plaintiff, taking plaintiff's note for $8,000. (Tr. 18, 19, 48). The business bank account is carried as "Yarborough's Laundry Account," with plaintiff signing the checks (Tr. 50). The license is in plaintiff's name (Tr. 43) as is the personal property,[5] subject, of course, to the rights of the bank (Tr. 44).

There are three full time employees in the business (a mechanic and two female attendants, Tr. 50, 110) as well as a part-time bookkeeper (Tr. 112). Plaintiff's wife helps out when the attendants are not working. The mechanic, having had some experience in the business, is vested with a good portion of the responsibility as to the day-to-day operation (Tr. 111, 112) and plaintiff himself apparently spends little time at the laundry. He stated that he is there from fifteen minutes to two hours a day four or five days a week " * * * look[ing] around to see if the place is clean and to see how business is going" (Tr. 113). Yarborough also stated that he and his wife empty the coin boxes about three times a month (Tr. 114). A fair summation of the extent of plaintiff's business activities was made by the Appeals Council:

> " * * * the type of business activity involved in this case is somewhat unique in that it does not necessitate any great amount of physical labor or, for that matter, managerial services. In this regard, the degree of physical work required in a laundromat in which the customers themselves routinely operate the washing and drying machines, was done by three full time workers with the aid of the claimant's wife. The accounting functions necessary were performed by a part-time bookkeeper. Even the supervisory and managerial services necessary to carry on a trade or business of this particular type are of no great magnitude. There was, in fact, little to require supervision." (Tr. 5.)

Notwithstanding its apparent ease of operation, the business itself was relatively substantial, as is indicated by Yarborough's tax return for 1964 (Tr. 94–100), in which he listed himself as self-employed and Mrs. Yarborough as a housewife. The supporting schedule of business expense (Tr. 97) showed plaintiff as "owner" of the business, and the

---

5. In 1965, the laundromat included thirty washers, seventeen dryers, and eight dry cleaning machines, four of which were operational (Tr. 110).

self-employment income was credited to plaintiff under his own social security account number (Tr. 99). Gross income from the self-service laundromat for the year 1964 was $38,935.86, and the net income reported was $5,547.79 (Tr. 97).

## CONCLUSIONS OF LAW

The findings of the Secretary that the business is and has been operated by the plaintiff (Tr. 5), that he alone exerts overriding managerial responsibility (to the extent that there was managerial responsibility) (Tr. 5), and that the operation netted plaintiff earnings in excess of $5,500. for the year 1964 (Tr. 21), are supported by substantial evidence and are accepted by this Court. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir., 1964). Although there was some evidence to the effect that plaintiff's wife had taken over the management of the business (Tr. 42, 50, 56, 108), her own testimony (Tr. 55–60, 61) indicated that she was not very knowledgeable about it, and this, together with the testimony as to plaintiff's participation, must be held to constitute the substantial evidence necessary to dictate acceptance of the Secretary's conclusions. With regard to the net earnings figure of $5,547., plaintiff contends that the so-called net earnings were consumed in reducing the loan and that the rate of repayment of the indebtedness precluded plaintiff's actually receiving any cash income from the operation of the business. That is, plaintiff's earnings may have been building his equity in the equipment but they were not putting food on his table. While the record supports this contention, it does not follow that because of this financial fact, the $5,547. should not warrant such consideration as may be properly given to an earnings figure. Plaintiff was, in fact, reducing the principal amount of his indebtedness and thereby increasing his net worth (see Tr. 20, 21, 63). That he was buying washing machines instead of groceries cannot alter the fact that there were earnings.

Whether the fact that there were earnings is controlling, however, brings us to the heart of this litigation. The Hearing Examiner quotes a departmental regulation, 20 C.F.R. § 404.1534(b), which at the time provided in pertinent part:

"An individual's earnings from work activity averaging in excess of $100.-00 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity in the absence of evidence to the contrary." (Tr. 20.)

He then applies the regulation to the earnings figure, concluding:

"The fact remains that he does have net earnings in excess of $5,500.00 per year and, therefore, has demonstrated that he is engaging in substantial gainful activity." (Tr. 21.)

The Appeals Council, in its opinion affirming as supplemented that of the Hearing Examiner, cites another departmental regulation, 20 C.F.R. § 404.1532 (a), to the effect that "supervisory, managerial, advisory, or other significant personal services rendered by a self-employed individual generally demonstrate an ability to engage in substantial gainful activity" (Tr. 5). In the same breath, however, it points out that the supervisory and managerial services here were of no great magnitude and that "[t]here was, in fact, little to require supervision" (Tr. 5). Thus it is clear that controlling significance was given to the evidence of plaintiff's earnings. That evidence does not by itself and in view of other evidence constitute the substantial evidence necessary to support the Secretary's decision that plaintiff had regained an ability to engage in substantial gainful activity. Leftwich v. Gardner, 377 F.2d 287 (4th Cir., 1967); Hanes v. Celebrezze, 337 F.2d 209 (4th Cir., 1964).

In Leftwich and Hanes, supra, somewhat similar situations were before the United States Court of Appeals for the Fourth Circuit. John J. Leftwich was a fifty-two-year-old manual laborer who, though suffering from spondylolis-

thesis and congenital marked curvature of the spine so that he could not stoop, bend or lift, chose to work every day as a dishwasher to support his family. The Court held that the dishwashing job would not of itself foreclose his recovering disability benefits and that disability must be determined objectively and within the totality of the circumstances, including especially his afflictions. In *Hanes,* evidence of the claimant's earnings of $125.00 per month as a building custodian was held insufficient of itself and in light of other evidence to preclude disability. It was pointed out that the earnings regulation, 20 C.F.R. § 404.-1534(b), as written, merely created an inference of ability to engage in substantial gainful activity, *in the absence of evidence to the contrary.*[6]

A prolonged discussion of *Leftwich* and *Hanes* is unnecessary. The distillation of the two cases, however, leaves us with this proposition: under the Social Security Act as it was then written, there was no earnings plateau, the attainment of which operated as a shut-off valve for disability benefits. As was stated in *Leftwich:*

"* * * Hearing Examiners may not quit thinking when a claimant's earnings reach a magic mark. The test is not whether (a claimant) by willpower can stay on his feet yet another day— but whether objectively and in the totality of circumstances, including especially his afflictions, he is disabled within the meaning of the Social Security Act." Leftwich v. Gardner, supra, 377 F.2d at 290, 291.

In this instant case, even more so than in many others involving disability determinations,[7] there is little, if any, doubt that plaintiff could have spent the rest of his life sitting and lying around the house, waiting for the postman to bring his monthly benefits check, which would have kept right on coming but for his attempt to avoid a life of complete indolence. The stifling of initiative would seem to be an undesirable by-product of our social welfare programs.

The Court is not unaware of the other side of the monetary cut-off problem, and of course, it would be just as ironic to spend the taxpayer's social welfare dollars on persons who, because of adequate self-employment income, would have no need for the sustenance those dollars might provide.

The Congress gave its attention to the problem in its recent reconsideration of the social security laws and has made substantial changes in the law through the Social Security Amendments of 1967.[8] Some dissatisfaction was expressed in the legislative history of these amendments concerning the trend of court decisions and their effect upon the cost of the disability insurance program.[9] The report of the Senate Committee on Finance refers to an erosion of the definition of disability over a period of time.[10] Whether this so-called erosion results from a lack of acuity on the part of the courts or a lack of precision on the part of the Congress is conjectural. At any rate, the Congress has now spoken with precision on the matter of an earnings plateau as well as certain other matters concerning the definition of dis-

6. In discussing and applying any administrative regulation, one must remember, of course, the hornbook principle that the power of an administrative agency to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, but power to adopt rules and regulations to carry into effect the will of Congress as expressed by statute; regulations issued by a governmental agency to which the administration of a statute is committed may not expand or extend the provisions of the

statute or add to the conditions of a right a condition not stated therein.

7. Most of the cases involve denial of an original application for a period of disability and disability insurance benefits rather than, as here, termination of an already established disability.

8. See 1 U.S.Cong. & Adm.News '67, pp. 923–1064.

9. See 2 U.S.Cong. & Adm.News '67, pp. 2880–2883.

10. 2 U.S.Cong. & Adm.News '67, p. 2880.

ability and has included in the amendments a specific provision that where the work *or earnings* of an impaired individual demonstrate ability to engage in substantial gainful activity under criteria prescribed by the Secretary, the individual is not disabled within the meaning of the Social Security Act.[11] With this amendatory provision, the problem is apparently resolved with regard to new applications and with regard to certain cases pending.

■ It is the opinion of this Court, however, that the *Leftwich* and *Hanes* decisions were correct interpretations of the law as it existed at the time the cases were decided *and* are correct interpretations of the law which must be applied to this case. This is so because section 158(e)[12] of the Social Security Amendments of 1967 specifies with exactness the situations to which the section 158 amendatory provisions apply. The amendments concerning the definition of disability are to be effective with respect to (among the others mentioned) *applications* for disability insurance benefits and for disability determinations filed before the month in which the Act (that is, the 1967 amendments) was enacted if the applicant has not died and if notice of the final decision of the Secretary has been given before such month and a civil action *with respect to such final decision* has been commenced and the decision in

that civil action has not become final before the month of enactment. Yarborough's situation is not covered. This litigation stems not from the denial of an original application but from the termination of a period of disability and disability insurance benefits which had already been in effect for some three years. As has been previously noted, plaintiff's application was filed on February 26, 1962. On July 10, 1962, a Certificate of Social Insurance Award was issued, which certificate contained the following statement:

"RECONSIDERATION.—If you believe that this determination is not correct, you may request that your case be re-examined. If you want this reconsideration, you must request it not later than 6 months from the date of this notice." (Tr. 80.)

When Yarborough failed to request reconsideration within the six months period, that certificate represented the final decision of the Secretary as to the *application*. No civil action was commenced with respect to *such* final decision. What occurred subsequently was a suspension of benefits pursuant to section 225 of the Act, 42 U.S.C.A. § 425, a final decision of the Secretary adverse to the plaintiff and then a civil action with respect to that termination. For purposes of the suspension of benefits section (42 U.S. C.A. § 425), the term "disability" has the

---

11. "(4) The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings *derived from services* demonstrate an individual's ability to engage in substantial gainful activity. Notwithstanding the provisions of paragraph (2), an individual whose services or earnings meet such criteria shall, except for purposes of section 222(c), be found not to be disabled." Pub.L. No. 90–248, § 158(b) (January 2, 1968), see 1 U.S.Cong. & Adm.News '67, p. 983.

12. "(e) The amendments made by this section shall be effective with respect to applications for disability insurance benefits under section 223 of the Social Security Act, and for disability determinations under section 216(i) of such Act, filed—

"(1) in or after the month in which this Act is enacted, or

"(2) before the month in which this Act is enacted if the applicant has not died before such month and if—

"(A) notice of the final decision of the Secretary of Health, Education, and Welfare has not been given to the applicant before such month; or

"(B) the notice referred to in subparagraph (A) has been so given before such month but a civil action with respect to such final decision is commenced under section 205(g) of the Social Security Act (whether before, in or after such month) and the decision in such civil action has not become final before such month." Pub.L. No. 90–248, § 158(e) (January 2, 1968), see 1 U.S.Cong. & Adm.News '67, p. 984.

meaning assigned in section 223 of the Act, 42 U.S.C.A. § 423. Section 158(c) (9) of the 1967 Amendments [13] inserted the amendatory provisions regarding the definition of disability (that is, the new section 223(d) of the Act) into section 225, 42 U.S.C.A. § 425, but this, of course, was subject to the section 158 applicability provisions, discussed supra. Therefore the amendments regarding the definition of disability are specifically not applicable to the situation before this Court.

 Under the law which must be applied to this case and the decisions with regards thereto, this Court concludes, upon a review of the record as a whole, that the decision of the Secretary is not supported by substantial evidence. A redetermination of disability should be made, the purpose of which should be to find out if Yarborough, in fact, has the *ability* to engage in activities which are *substantial* and gainful. Evidence as to the nature and extent of his business activities as well as evidence of earnings are properly to be considered, but careful attention should be given to the medical evidence, and particularly, in view of the record, to the psychiatric status of the individual. If the man is, in fact, disabled within the meaning of the provisions of the Social Security Act which apply to his case, and in spite of his disablement chooses to work, he may not be penalized for his choice.

In view of the foregoing, the Court does not reach the question concerning overpayment.

The decision of the Secretary, not being supported by substantial evidence, is reversed and remanded to the Secretary for further proceedings not inconsistent with this opinion.

### ORDER

Now therefore, in accordance with the foregoing, it is:

Ordered that motion of defendant for summary judgment be, and the same is hereby denied;

Further ordered that motion of plaintiff for summary judgment, as to the issue of lack of substantial evidence to support the decision of the Secretary, be, and the same is hereby allowed; that the motion of plaintiff for summary judgment otherwise be, and the same is hereby denied;

Further ordered that the final decision of the Secretary be, and the same is hereby reversed and this cause remanded to the Social Security Administration for further proceedings in conformity with this opinion;

Further ordered that the Clerk shall serve copies of this OPINION and ORDER upon all counsel of record.

Let this order be entered forthwith.

---

13. 1 U.S.Cong. & Adm.News, '67, p. 983.