**Gussie S. BROWN, Plaintiff,**

**v.**

**Wilbur J. COHEN, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 68–269.**

United States District Court
D. South Carolina,
Charleston Division.

Jan. 28, 1969.

**30**

Gordon H. Garrett, Charleston, S. C., for plaintiff.

Klyde Robinson, U. S. Atty., Robert G. Clawson, Jr., Asst. U. S. Atty., Charleston, S. C., for defendant.

## ORDER

DONALD RUSSELL, District Judge.

This is an action asking the District Court to review a final decision of the Secretary of Health, Education, and Welfare, in accordance with 205(g) of the Social Security Act (42 U.S.C.A. § 405(g)). The decision of the Secretary denied the plaintiff the period of disability and disability insurance benefits for which he applied.

The plaintiff filed an application for disability insurance benefits on August 31, 1964, alleging that he became unable to work on January 9, 1964, due to high blood pressure and a heart ailment. This application was disallowed initially and after reconsideration. Upon plaintiff's request a hearing was conducted by a Hearing Examiner who filed his decision dated July 27, 1965, holding that the plaintiff was not under a disability as defined in the Act beginning on or before November 1, 1964, for entitlement to disability insurance benefits, and on or before November 30, 1964, for establishment of a period of disability. The Appeals Council granted a review and affirmed the decision of the Hearing Examiner holding that the plaintiff was not entitled to a period of disability or to disability insurance benefits under the provisions of the Act in effect prior to the Social Security Amendments of 1965, or as amended thereby. An action was instituted by the plaintiff in the United States District Court and the Honorable Robert W. Hemphill, United States District Judge, affirmed the decision of the Secretary. No review was sought of Judge Hemphill's opinion.

The plaintiff filed another application on February 24, 1967, again alleging that he became unable to work in January, 1964, because of high blood pressure and a heart ailment. This claim was denied initially and on reconsideration and the plaintiff requested a hearing. The Hearing Examiner found that the plaintiff was not under a disability within the meaning of the Act as amended July 30, 1965, at any time on or before January 2, 1968—the date of the decision. The decision of the Hearing Examiner became the final decision of the Secretary when the Appeals Council affirmed the decision of the Hearing Examiner on February 13, 1968.

The plaintiff was born October 27, 1922; he has a ninth grade education; in an unskilled laborer (truck driver, longshoreman and concrete finisher), having worked as a concrete finisher until January 9, 1964, when he received a broken finger on his left hand. The only work he has done since that time is as a gardener for about two weeks (except the work he has been doing since October, 1967). He alleges that he has

had a heart ailment since birth and that he suffers with high blood pressure. Additionally, he says that every joint in his body hurts—that the hurting is in his chest and lower part of his stomach, head and arms; that walking brings on this pain—at times he can walk six blocks without feeling it and the next time he cannot walk two blocks before he feels the pain, and that on account of the stiffness of his joints, his wife has to help him dress; he tries to help his wife keep the house clean—but cleaning the windows about once a month is all he is able to do.

Plaintiff's wife, who is a nurse's aide, testified that her husband suffers pain in his stomach and chest, that he is unable to walk more than three blocks without suffering pain in his chest; that she helps him dress; that he often has sleepless nights; that when he has pain in his stomach and chest she applies a cold cloth, gives him Maalox for his stomach, and tries to keep him quiet. She says that he is unable to lift anything heavy. She further testified that her husband had not worked for about two and one-half years but she was not positive as to dates.

Since October, 1967, plaintiff has been employed by the Charleston Patrol and Guard Service, a private concern, at the C. E. Brown High School. His brother transports him to and from work. He works from 8:00 a. m. until 3:30 p. m., five days a week, standing on his feet all the time he is on the job. He described his duties as follows: "Q. Would your duties in this patrol outfit require you to restrain anyone physically? A. If it is possible. Q. What do you mean if it is possible? What could you do alternatively? A. If it's somebody who does not belong to this particular school where I patrol; they are near the campus, which is not allowed, it is private property, I ask him to leave the school campus and he doesn't I've got to manhandle him. If he gets where I cannot do, which I hope I don't, or I'm not able to and if I do have to, then I'm supposed to go to the principal's office, call the police department, let them send a patrol down to arrest him." The job requires that plaintiff wear a uniform and that he be bonded. He is authorized to carry a pistol and blackjack. He makes from $48 to $50 a week. He testified that he is not paid when he is unable to work; that there have been about twenty-five days during the approximate seven weeks he has worked (at the time of the hearing) when he began feeling badly and took off an hour or several hours during the day, with the permission of the school principal, but without reporting such absence to the office and no record was made. The attorney for the plaintiff stated that no records and no testimony of the employer were offered for the reason that he had been instructed by plaintiff not to make any contact with plaintiff's employer because plaintiff was afraid of being fired.

Plaintiff offered the affidavit of Reverend Grant, an ordained minister of the Episcopal Church, who is Director of an Episcopal Mission Center, stating that on one occasion when he went to the home of the plaintiff, he found plaintiff in bed complaining of pain. He expressed the opinion that the plaintiff "has not been able to work because of real impairments or those that he is convinced that he does have"; and with particular reference to the job plaintiff is now holding and the requirement that he carry a pistol and blackjack, Reverend Grant stated "he does not have the nervous temperament or stability to be entrusted to such a position. I would not under any circumstances allow him around children under my supervision while so armed."

The medical evidence presented under the first application shows that a General Practitioner on September 16, 1964, made the following diagnosis of plaintiff's condition: Vascular hypertension and with Valvular Heart Disease, suggesting that plaintiff's activities should be restricted as to all laborious work at present. On October 8, 1964, an Internist examined plaintiff and stated that it appeared plaintiff may have hyperten-

sive cardiovascular disease Class I with episodes of paroxysmal tachycardia, but that no definite conclusion could be reached until certain tests were performed. Plaintiff refused to have these tests made.

At the hearing on the second application, the following medical evidence was offered: A General Practitioner on March 21, 1967, made a diagnosis of hypertensive cardiovascular disease, severe and chronic rheumatoid hypertrophic arthritis. On March 20, 1967, another General Practitioner made a diagnosis of hypertension; neuritis (slight enlargement of heart). On April 8, 1967, an Internist diagnosed plaintiff's condition as essential hypertension—functional cardiac classification I; anxiety neurosis, and stated "It is the impression of this examiner that this patient has mild essential hypertension and that he is either a malingerer or is having a severe anxiety neurosis of such severe degree as to prohibit any gainful employment. However, there is a very slight possibility that this patient could have a congenital aortic stenosis of such degree as to actually produce angina. This would be very unlikely, but in view of this murmur, it is the feeling of this examiner that to give this patient every benefit of the doubt, he should be evaluated at the Cardiac Clinic at the Medical College of S. C. Teaching Hospital." The recommended examination was performed at the Medical College and the following diagnosis made: "Our diagnosis is essential hypertension. We do not feel that he has other heart disease. His hypertension should respond to therapy, and we do not feel that he is significantly disabled on this basis. There is much to suggest emotional difficulty in this patient".

Plaintiff was examined by a psychiatrist on June 5, 1967, and the following report was made: "This is a difficult case from a diagnostic standpoint because of a number of contradictory facets. On the basis of this one interview, I do not see enough psychopathology to make a diagnosis of schizophrenic reaction. I feel that the most accurate diagnosis that could be made at this time would be that of a chronic anxiety reaction with a very large element of conversion features and hypochondriasis. Mr. Brown is able to handle funds in his own interests, and he appears to be functioning within reasonable limits of judgment and self-care. Because of the apparent iatrogenic beginnings of this condition of psychopathology, I feel that the prognosis is definitely guarded without therapy. However, I feel that intensive psychotherapy with medical follow-up offers a fairly good prognosis at this time."

Plaintiff's personal physician on August 16, 1967, made the following diagnosis: "Duodenal ulcer. Treatment started August 11, 1967—Totally disabled for 1 week; light work for 3 weeks; then full duty. Disability 100% 1 week; 50% 3 weeks; 0% thereafter."

■ The sole question before me is whether the Secretary's decision that the plaintiff was not under a disability (as defined in the Social Security Act as amended July 30, 1965) at any time during the period beginning January 15, 1966, and ending September 30, 1967, when the plaintiff last met the earnings requirement of the Act, or at any time on or before January 2, 1968, the date of the decision, is supported by substantial evidence. 42 U.S.C.A. § 405(g) makes the Secretary's decision conclusive upon the Court if it is supported by substantial evidence. This Court has no authority to try the issues *de novo*.

The Fourth Circuit Court of Appeals has defined "substantial evidence" to mean that "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze (CCA 4 1966) 368 F.2d 640, 642.

The Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impair-

ment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

■■ Plaintiff has engaged in substantial, gainful work since October, 1967. The inference of ability to work is stronger where the job itself constitutes substantial, gainful activity. Hanes v. Celebrezze (CCA 4 1964) 337 F.2d 209. Plaintiff's job as an uniformed security guard requires physical stamina and involves responsibility and the use of discretion and judgment. He is a bonded employee. He has performed the work assigned him without assistance. There have been no special concessions or conditions in connection with the work unless plaintiff's testimony, which is not substantiated by any other evidence, that he has had to leave his job for an hour or so on numerous occasions because he was not feeling well, be considered a concession. The job was not obtained "on the basis of politics" or as a "charitable gesture" so far as the record reflects. The job was not "made" involving minimal or trifling tasks, but on the contrary is one which if plaintiff resigned a new man would be hired to take his place. Plaintiff testified, when questioned as to his reason for going to work, that his wife told him he had to go to work to support his two children. It is to be assumed that if his wife thought he was unable to work she would not have demanded that he work. The work is productive. Plaintiff earns in excess of $180 per month. (See, Social Security Regulations, Sec. 404.1534(b).) Cf. Hanes v. Celebrezze (CCA 4 1964) 337 F.2d 209; Leftwich v. Gardner (CCA 4 1967) 377 F.2d 287.

■ Although opinion testimony of physicians cannot be deemed conclusive of the ultimate issue, whether claimant is disabled within the meaning of the Act, it is nevertheless relevant and must be considered. (See, Thomas v. Celebrezze (CCA 4 1964) 331 F.2d 541, 542–543; Underwood v. Ribicoff (CCA 4 1962) 298 F.2d 850; Regulation of the Secretary, 20 C.F.R. Sec. 404.1526.) In the opinion of the doctors, plaintiff's hypertension should respond to therapy and the functional cardiac classification I is not significantly disabling. His arthritis is not severe and his last examination showed his extremities "not remarkable" and "no joint deformities". His major impairment is mental, but the psychiatrist felt that plaintiff was functioning within reasonable limits of judgment and self-care, was not depressed, and that psychotherapy with medical follow-up offered a fairly good prognosis.

■ I conclude therefore that plaintiff's job constitutes substantial gainful activity and that he is fully able to perform it. Viewing the record as a whole, it is my opinion that the decision of the Secretary is supported by substantial evidence and should be affirmed. The motion of the defendant for summary judgment is granted, and

It is so ordered.