**Maurice C. JOHNSON and Virginia Johnson**

v.

**The Honorable Elliott RICHARDSON, Secretary of Health, Education and Welfare.**

**Civ. A. No. 70–2621.**

United States District Court,
E. D. Pennsylvania.

Dec. 22, 1971.

Roland Morris, Philadelphia, Pa., for plaintiffs.

Jeffrey M. Miller, Philadelphia, Pa., for U. S. Atty. L. C. Bechtle, Philadelphia, Pa., for defendant.

## OPINION

TROUTMAN, District Judge.

This action, brought against the Secretary of Health, Education and Welfare, pursuant to Section 1869(b) of the Social Security Act, 42 U.S.C. § 1395ff (b), seeks to review a final decision of the Secretary, denying the plaintiff the payment of benefits for services provided to him, Maurice C. Johnson, as an in-patient at the Haverford Nursing Center, during a portion of the period May 19, 1969, through July 7, 1969.

Judicial review is governed by the provisions of Section 205(g), 42 U.S.C. § 405(g), which provides, inter alia, "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *".

**392**

This Court has no authority to hear the case de novo. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Mauldin v. Celebrezze, 260 F.Supp. 287 (D.C.S.C. 1966).

■ Therefore, the question here involved is whether there is substantial evidence to support the Secretary's decision. To answer this question, it is the duty of this Court to look at the record as a whole. Boyd v. Folsom, 257 F.2d 778 (3rd Cir. 1958); Klimaszewski v. Flemming, 176 F.Supp. 927 (E.D.Pa. 1959).

■ "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); Consolidated Edison Co. v. Labor Board, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). It "must do more than create a suspicion of the existence of the fact to be established", NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660. It must be enough, if the trial were to a jury, to justify a refusal to direct a verdict when the conclusions sought to be drawn from it is one of fact for the jury. If there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings should be affirmed. Underwood v. Ribicoff, 298 F. 2d 850, 851 (4th Cir. 1962).

Section 1862 of the Act, 42 U.S.C. § 1395y, lists a number of "exclusions from coverage". Among others, there is Section 1862(a) (9), 42 U.S.C. § 1395y(a) (9), which provides for an exclusion "where such expenses are for custodial care". Basing its decision upon such exclusion, the appeals council concluded, inter alia, as follows:

> "In summary, the medical evidence of record indicates that the claimant was ill while at the Haverford General Hospital and that a period of restorative care might have been necessary immediately after discharge from the hospital. However, it does not show that at any time during the period at issue, that is, from June 1 to July 7, 1969, the claimant needed and received skilled nursing care on a continuing basis for any condition or conditions with respect to which he was receiving inpatient hospital services prior to entering the Haverford Nursing Center or for a condition which arose while receiving extended care for treatment of the original condition.
>
> Therefore, it is the decision of the Appeals Council that the claimant is entitled to have payment made on his behalf for post hospital extended care services received in the Haverford Nursing Center for the period from May 19, 1969 to June 1, 1969, but not for the period June 1 to July 7, 1969. The decision of the hearing examiner is reversed."

(See page 9 of the record.)

Thus, we are here concerned with the question whether the findings and conclusion of the Appeals Council is supported by "substantial evidence" as that term has been defined by the Courts.

Turning now to the record, we note that the hearing examiner found otherwise, having concluded, on April 30, 1970, that the plaintiff, during the period in question, "required skilled nursing services" and was, therefore, entitled to coverage under the Act. (P. 21) This decision followed a hearing held before the examiner on April 10, 1970, at which time Mrs. Evelyn Miller, a registered nurse, testified that, based upon her nursing experience and as a friend of Mrs. Johnson, she was of the opinion that Mrs. Johnson could not have taken care of the patient and plaintiff, Mr. Johnson, during the period June 1969. (P. 34) She spoke as a friend of the family, basing her conclusions upon observations made during social visits. (P. 34) She has never rendered any professional services to the plaintiffs. She did visit Mr. Johnson while he was in

the nursing home, but did not, during her visits, observe that he received any medication. (P. 35) He was in bed and, according to her, "receiving no particular care", just "lying in bed talking with us". (P. 35)

Dr. Norman Learner reviewed the record and concluded that during the period in question, Mr. Johnson "needed primarily custodial care". (P. 37) He conceded that while the plaintiff might "do better" in an extended care facility, he was of the opinion that the care rendered to the plaintiff during the period in question was "custodial as contrasted with medical". He made those determinations based upon the records and without examination of the plaintiff at the time. (P. 37) After looking at the record, he concluded that the type of care which the plaintiff was receiving was "custodial" in nature. He buttressed his conclusion with observations that the plaintiff was receiving oral medications only which "could have been administered by a non-professional or non-skilled personnel". (P. 38) He also pointed out that during the period in question the attending nurses made only four entries on the plaintiff's record, namely, on May 19 the plaintiff's admission was noted; on May 20 he was visited by the doctor; a third note that he received some aspirin and, finally, a fourth entry on July 6 that he was being discharged. It was the conclusion of the witness that the lack of entries and lack of notes on the plaintiff's record indicated lack of professional treatment which, combined with other evidence on the records, led the witness to the professional conclusion that the plaintiff "primarily received custodial care". (P. 38) He failed to find "any evidence that he (plaintiff) required any expert care". (P. 38) He conceded that on one occasion an electrocardiogram was done, that from time to time the blood pressure and pulse were taken, the latter done every day (p. 39) and likewise noted specifically the medications being given the plaintiff. (P. 40) For the conditions from which the plaintiff suffered he said observation by a physician was required only "every three or four weeks". (P. 40) Careful cross-examination of the witness established that Mrs. Johnson, in her condition, might not have been able to take care of the plaintiff, Mr. Johnson. (Pp. 45, 46) However, the ability or inability of his spouse to assist in the care of a patient is not determinative of eligibility under the Act.

Turning to the balance of the record which does not consist of oral testimony, but rather of entries placed upon the plaintiff's chart during his stay at the nursing home and during the period in question, we note that the "doctor's progress notes" show that following admission on May 19, 1969, plaintiff's condition was noted, on May 23, as "greatly improved from time of admission to Haverford Hospital". On May 31 it was noted "abnormal fibrillating gone except for occasional episodes of fibrillation". On June 3 it was noted "mind clearer-pulse regular". On June 12, 1969, it was noted "patient ambulatory and doing quite well". On June 17, 1969, it was noted "Patient doing well, pulse regular and almost nsr (normal sinus rhythm). On July 1 it was noted "condition unchanged". (P. 77)

These original entries made at the time by the attending physician clearly support the Secretary's decision here reviewed.

Similarly, the "doctor's orders", only three in number, entered on May 19, May 23 and July 3, 1969, (p. 78) likewise support the Secretary's decision. The subject-matter of the entries made and the services ordered do not support the conclusion that trained and professional personnel were required to administer effectively to the plaintiff's medical needs.

The entries made by the nurses on the "nurses record" during the period in question do not support the plaintiff's

contention. Such entries are only four in number, the first being on May 19, relating to the plaintiff's admission, and noting that he was "able to walk around". The next entry was made on May 20, at which time it was suggested that the plaintiff "had (a) good day". The next entry was on June 26, at which time bufferin was administered "for headache" and, finally, on July 6 it was noted that the patient was discharged to his home in care of his family. (P. 72)

We have likewise noted the reports of Dr. Edward H. Kotin, (p. 101 et seq.). We have otherwise reviewed the record in its entirety including certain other notations and entries made by Dr. Kotin. Thus, we have considered the record as a whole and in its entirety. It seems evident that there is substantial evidence to support the conclusion that by June 1, 1969, the plaintiff's recovery had progressed to the point where skilled nursing services on a continuing basis were no longer required. That the plaintiff might be more comfortable or even "do better" in an extended care facility is not the test under the statute. Neither may we consider the understandable fact that his wife, likewise elderly and deaf, was not capable of looking after his needs at home. The plight of senility, and the burdens that the physical debilities indigenous to old age can place not only on the aged sufferers themselves, but also on their families who care for them, are not to be disputed. Resulting and understandable sympathies for the plight of these fine old people cannot be the basis for our decision. It is to the Social Security Act and to its provisions that we must look, as did the Secretary and the Appeals Council, in reaching a conclusion. We may not weigh or re-weigh the evidence. Celebrezze v. Zimmerman, 339 F.2d 496 (5th Cir. 1964).

■ The burden of proof is upon the one seeking the benefit of the statute. Staples v. Gardner, 357 F.2d 922 (5th Cir. 1966). The credibility to be given to the testimony of the various witnesses and the weight to be given to the evidence are matters to be determined by the Secretary. Stillwell v. Cohen, 411 F.2d 574 (5th Cir. 1969); Celebrezze v. Zimmerman, *supra.* Similarly, conflicts in the evidence and the reasonable inferences to be drawn therefrom are matters to be resolved by the Secretary. Martin v. Finch, 415 F.2d 793 (5th Cir. 1969).

■ Viewing the record as a whole, it contains substantial evidence to support the Secretary's conclusions. On the entire record, we conclude that the denial of benefits was proper. In reaching such conclusion we have carefully considered the admonitions of the Court in Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) and have accorded to the findings of the examiner the relevance which we believe they reasonably command in determining the answer to the comprehensive question whether the evidence supporting the Secretary's order is substantial. We have, as indicated, considered the record as a whole including the findings and conclusions of the examiner.

The plaintiff's motion for summary judgment will be denied and the Secretary's motion for summary judgment will be granted.