**Freda MUTZIG, Plaintiff,**

v.

**Elliot L. RICHARDSON, Secretary, Department of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 71–1029.**

United States District Court,
W. D. Pennsylvania.

July 12, 1972.

tured tibia and fibula. Mrs. Mutzig was 74 years old at that time. She remained in the hospital for about nine weeks. The records indicate that Mrs. Mutzig received physical therapy at Bellevue (from mid-December until mid-January), but without success. She apparently was able to sit but could not raise herself even with the assistance of bars. If helped up she was unable to support her own weight. The therapist attributed Mrs. Mutzig's difficulty to her excess weight, (5 feet, 3 inches—170 pounds) and severe arthritis in the knees. On January 23, 1970, Mrs. Mutzig was transferred from Bellevue Suburban Hospital to St. John's General Hospital Convalescent Unit and Nursing Home. At this time Mrs. Mutzig still required physical therapy several times weekly. But other than these two or three times weekly physical therapy sessions, Mrs. Mutzig received no specialized or skilled care. Her stay at St. John's continued for many months. We however need be concerned only with the period up to 100 days after her admission since the law only provides compensation for that period, 42 U.S.C.A. § 1395d(a)(2). On February 10, 1970, Mr. Cooper of the Social Security office advised Mrs. Mutzig's son that payment for care received at St. John's would not be made under subchapter XVIII of the Act (42 U.S.C.A. § 1395 et seq.) On February 14, 1970, the hospital utilization committee acted to terminate benefits to Mrs. Mutzig.[1]

Through her son, Mrs. Mutzig sought review of her eligibility for benefits. A timely request for a hearing was filed and a hearing was held on February 11, 1971. The hearing examiner determined that:

> "Although Claimant, Freda Mutzig, has benefited from the two or three times a week physical therapy services she received while a patient at the St. John's Nursing Home and Convales-

Neighborhood Legal Services, Pittsburgh, Pa., for plaintiff.

James A. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

---

## MEMORANDUM and ORDER

McCUNE, District Judge.

This is an appeal from a denial of Medicare benefits by the Secretary of Health, Education and Welfare. We have jurisdiction under 42 U.S.C.A. § 1395ff and 42 U.S.C.A. § 405(g).

In November of 1969 the claimant Mrs. Mutzig was hospitalized at Bellevue Suburban Hospital suffering with a frac-

---

1. Medicare benefits are not available after a hospital utilization committee finds that further inpatient services are not longer medically required. 42 U.S.C.A. § 1395f (a)(7).

cent Unit from January 23, 1970 to date, the furnishing of such occasional services averaging at most three hours a week, when viewed in light of the totality of the evidence and of the requirements of Section 1814(a)(2)(C) [42 U.S.C.A. § 1395f(a)(2)(C)] and Sections 1861(h) [42 U.S.C.A. §§ 1395x (h)] and 1862(a)(9) [42 U.S.C.A. § 1395y(a)(9) of Title XVIII of the Social Security Act, as amended, fails to meet the level of post hospital extended care services which would entitle the claimant to have payment made on her behalf under the Act for up to 100 days of post hospital extended care, . . . ." Hearing Examiners Decision, page 7.

Mr. Mutzig then sought review of this determination. The Appeals Counsel upheld the hearing examiner thereby making the hearing examiner's decision the final decision of the Secretary. The claim here at issue being more than $1,000.00, 42 U.S.C.A. § 1395ff authorizes review of the Secretary's determination in accordance with 42 U.S.C.A. § 405(g).

Under 42 U.S.C.A. § 1395f(a)(2)(C), the Social Security program will pay for expenses incurred as a result of post hospital care, with the following limitations:

"(a) Except as provided in subsection (d) of this section, payment for services furnished an individual may be made only to providers of services which are eligible therefor under section 1395cc of this title and only if—

\*　\*　\*　\*　\*　\*

(2) a physician certifies . . . that—

\*　\*　\*　\*　\*　\*

(C) in the case of post-hospital extended care services, such services are or were required to be given on an inpatient basis because the individual needs or needed skilled nursing care on a continuing basis for any of the conditions with respect to which he was receiving inpatient hospital services . . . prior to transfer to the extended care facility or for a condition requiring such extended care services which arose after such transfer and while he was still in the facility for treatment of the condition or conditions for which he was receiving such inpatient hospital services;" 42 U.S.C.A. § 1395f (a)(2)(C).

The act does include physical therapy services among those extended care services which are compensable, 42 U.S.C.A. § 1395x(h)(3). It is the administration of physical therapy upon which claimant relies for support of her claim. The testimony of the physical therapist was that Mrs. Mutzig required therapy for six months before she could take even a few steps with a walker. But physical therapy is the only "extended care service" [2] required by Mrs. Mutzig during this period. The hearing examiner concluded that the balance of the care provided Mrs. Mutzig was supportive or "custodial." The statute specially excludes from coverage of subchapter XVIII any payment when the "expenses are for custodial care," 42 U.S.C.A. § 1395y(a)(9). We have located only two cases construing the "custodial care" provision, Johnson v. Richardson, 336 F.Supp. 390 (E.D. Pa.1971) and Sowell v. Richardson, 319 F.Supp. 689 (D.S.C.1970). The *Johnson* case involved a patient who required care after a hospital illness. However, there was nothing to indicate that Mr. Johnson needed continuous skilled nursing care. There was evidence that his elderly and unwell wife could not care for him but the hearing examiner concluded that Mr. Johnson's needs were custodial as contrasted with medical, since they could in large part be dealt with by non-professionals. The court affirmed the Secretary's denial of benefits. In the *Sowell* case the claimant was an estate. The decedent had been hospitalized for shortness of breath. While in the hospital it was determined that decedent was suffering widespread cancer.

2. 42 U.S.C.A. § 1395x(h) defines the term extended care services.

After her removal from the hospital to a nursing home treatment with various drugs administered by injection was necessary. The court concluded that all evidence in the case indicated that Mrs. Sowell required the constant attention of skilled nurses and therefore reversed the Secretary's denial of benefits. Viewed together these cases point out that each case of this type must be decided on its own facts. The instant case is, on its facts, more nearly like the *Johnson* case.

■ The scope of our review is limited by 42 U.S.C.A. § 405(g) to a determination of whether the Secretary's determination that Mrs. Mutzig's post hospital care was custodial is supported by substantial evidence. The record reveals that the only services received by Mrs. Mutzig during her stay at St. John's were physical therapy and unskilled nursing care. The record is devoid of evidence which would indicate that Mrs. Mutzig had, as required under § 1395f(a)(2)(C), to be an inpatient in order to receive the needed physical therapy.[3] We conclude that physical therapy costs are not, under § 1395f(a)(2)(C), compensable when performed on an inpatient basis when the patient could receive such physical therapy at home. The act specifically allows for compensation for needed physical therapy on an at home basis, but only under specified circumstances, 42 U.S.C.A. § 1395x(p), which have not been met in this case.

■ The record clearly reveals that Mrs. Mutzig needed care, but it is equally clear that she did not require the continuous attention of professionals. She was confined to bed because of a broken leg. Her regaining her ability to walk was retarded by her age, 74 years, excessive weight, arthritis and poor motivation. She did require assistance for dressing and use of the bathroom. On the other hand, she could feed herself, was not mentally confused and received medicines only orally. She in brief re-

quired care but suffered no acute condition of a life-threatening nature.

On this record we must conclude that the Secretary's conclusion that Mrs. Mutzig's care at St. John's was custodial rather than services required to be given on an inpatient basis because of a need for continuous skilled nursing care is supported by substantial evidence.

---

3. The February 14, 1970, action of the hospital utilization committee is a medical

opinion that Mrs. Mutzig did not require inpatient care.