Clara R. HESLEP, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.

No. 10055.

United States Court of Appeals Fourth Circuit.

Argued Dec. 8, 1965.

Decided Jan. 31, 1966.

892

Stuart A. Barbour, Jr., Roanoke, Va., for appellant.

William C. Breckinridge, Asst. U. S. Atty. (H. Garnett Scott, Asst. U. S. Atty., on the brief) for appellee.

Before SOBELOFF and BRYAN, Circuit Judges, and MAXWELL, District Judge.

SOBELOFF, Circuit Judge:

The District Court granted summary judgment, affirming the Secretary's determination "that the evidence of record does not establish that at the time the claimant filed her application on April 20, 1961, she was under a 'disability' as defined in the Act, which began on or before March 31, 1961, when she last met the special earnings requirements for the purpose of entitlement."

The Secretary admits that when Miss Heslep applied for benefits she was suffering from "hypertensive vascular disease" (high blood pressure) and that such disease is a "medically determinable physical or mental impairment" within the meaning of sections 216(i) and 223(c) of the Social Security Act. 42 U.S.C.A. §§ 416(i) and 423(c). The Secretary further admits that she had been suffering from this disease prior to March 31, 1961.

The Secretary nevertheless maintains that the claimant is not entitled to benefits merely because she suffers from hypertensive vascular disease. In order to sustain the claim, the Secretary contends, it must be shown that as a result of this condition she had some "clinically determinable end-organ" impairment. Section 404.1514(d) of the Secretary's Regulations reads:

"To substantiate the allegation of impairment due to hypertensive vascular disease, the evidence should establish a persistently elevated diastolic pressure with end-organ involvement and its severity. Generally, hypertensive disease does not cause severe loss of capacity until it becomes severe enough to cause significant abnormalities in one or more of the four main end-organs: i. e., the heart, the brain, the kidneys or the eyes." 20 C.F.R. § 404.1514(d).

On appeal, the Secretary relies on the testimony of Dr. H. A. Sieber and Dr. J. E. Botton, to whom the plaintiff was referred by the Social Security Administration, that despite her conceded hypertensive vascular condition, Miss Heslep was not suffering from any clinically demonstrable eye, heart, kidney, or brain impairment.

However, excerpts from examination reports of Dr. H. I. Johnson and Dr. E. N. Weaver, who also examined Miss Heslep at the request of the Administration, disclose that there was not, in fact, a total absence of clinically determinable heart impairment. Dr. Johnson observed that although there was "no clear-cut evidence of pulmonary edema," her heart was "markedly enlarged, the predominant enlargement being of the left ventricular segment." And Dr. Weaver reported:

"It is my impression, since this lady is only fifty-five and has severe hypertension, that she should be hospitalized for further medical and neurosurgical evaluation in regard to the possibility of a bilateral thoracolumbar sympathectomy."

If the ultimate question to be decided were whether Miss Heslep was suffering from substantial end-organ impairment as a result of her high blood pressure, we would perhaps be precluded from upsetting the Secretary's denial of benefits, for there is reliable evidence to support his determination that there was an absence of substantial end-organ impairment, although some of the Government's own testimony is to the contrary. See Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). But the ultimate question is not limited to a study of end-organ impairment. The question for decision is whether Miss Heslep suffers from a "medically determinable physical impairment" which has disabled her from engaging in substantial gainful employment. With respect to this question, based on an examination of the whole record, we find a lack of support for the Secretary's conclusion that "the evidence of record demonstrates that the claimant is, at most, moderately physically restricted," and that "she continues to be capable of [light work]."

The personal history of the claimant is pertinent. The appellant's work experience for the twenty years before her claimed disability had been as a forelady or manager of a garment factory in which capacities she supervised the work of about thirty girls. The Administration pointed out that the job in which Miss Heslep was employed before her illness did not require substantial physical exertion.

Since June, 1959, Miss Heslep has not worked. She stopped work on that date because of her father's illness, coupled with the fact that the plant had been sold and she would have become unemployed in any event. It is not suggested that she quit work with a view to claiming Social Security benefits. It was not until April 26, 1960, that Dr. G. R. Smith, Jr., first examined plaintiff and determined that she was suffering from high blood pressure. In the interval of eleven months between April 26, 1960, and March 31 of the following year, the cru-

cial date for eligibility, Dr. Smith and Dr. Taylor, his associate at the Shawsville, Virginia, clinic, examined and treated Miss Heslep forty-eight times. All this medical attention was secured before disability benefits were ever applied for. From his records, Dr. Smith reported:

"When seen on 4/26/60, her blood pressure was over 260 systolic and 160 diastolic (260/160). She was too dizzy to walk straight. Even with treatment, she has remained unsteady on her feet and has a slurred speech and apparently slow mental processes. In my opinion she was disabled on March 31, 1961 and continues to be so."

While the attending physician's opinion that Miss Heslep was disabled on March 31, 1961, may not be binding on the Secretary, we think it is entitled to substantial weight. See Celebrezze v. Walter, 346 F.2d 156 (5th Cir. 1965). None of the physicians to whom Miss Heslep was referred by the Secretary and upon whose reports the Secretary relies heavily, denied that she was suffering visible restriction of her physical capacity. In fact, each of the doctors who examined her at the instance of the Social Security Administration observed and confirmed the objective evidences of her disease. Dr. Sieber found muscle weakness and chronic edema of the feet and ankles. Dr. Botton reported that on "neurological examination she was found to be walking with short steps and in an obvious stage of generalized debility. Her voice was very low pitched with some suggestion of shortness of breath." [1]

At a hearing conducted on May 24, 1962, Miss Heslep testified that as of March, 1961, she was unable to do any housework; that as of September, 1961, she was unable to walk across the street to the grocery store; that in 1960 she had sold her automobile because persistent blackout spells prevented her from driving it; that she was unable to ride the bus alone because of her inability to raise her legs high enough to get on the bus; that she was unable to handle objects in a safe manner because of the weakness of her muscles.

Mrs. Rachel Fuquay, Miss Heslep's neighbor, testified in corroboration that she had been helping Miss Heslep since 1960; that three times she had seen Miss Heslep fall while going to the bathroom; that Miss Heslep had great difficulty grasping the telephone receiver and was unable to comb her own hair.

Miss Heslep also testified that she had received offers of employment but declined them on Dr. Smith's orders, the doctor warning: "if you do I'm not going to wait on you any more. You are unable to work." Later, after Miss Heslep requested the Social Security Administration to reconsider her application, Dr. Smith wrote on May 9, 1962:

"Miss Clara Heslep has been under my care for over two years. She has severe hypertension and hypertensive encepholopathy I think. At any rate, she is totally disabled. As a matter of fact she can hardly care for herself. Her response to medication has not been very satisfactory and several specialists have treated her without much benefit. I believe that any lay person who observes this lady very long can tell she cannot hold any sort of job."

We think that the Secretary has placed undue emphasis on the lack of clinically determinable end-organ involvement, and has unwarrantedly disregarded the testimony of Dr. Smith, the treating physician, as well as the unrefuted testimony

---

[1]. Dr. Botton summarized his findings as follows:
"It will be * * * difficult to explain to any extent her complaints on the only basis of her high blood pressure. We believe she probably has an associated amount of cervical osteoarthritis that might explain some of her headaches, neck pain, and possible arm weakness."
Thus this government doctor, acknowledging Miss Heslep's generalized debility, merely suggested a different pathological theory to explain her condition.

of Miss Heslep and Mrs. Rachel Fuquay. He has also accorded too little weight to the objective symptoms his own doctors observed. Celebrezze v. Walter, 346 F.2d 156 (5th Cir. 1965). See also Cyrus v. Celebrezze, 341 F.2d 192, 195 (4th Cir. 1965); Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). As this court recently said in Wimmer v. Celebrezze, 355 F.2d 289, 294 (1965): "Opinions limited to particular limbs or organs of the claimant are of little value, if unrelated to the entire man." Thus an analysis it is seen that the result reached was rested on "end-organ impairment"; other physical findings, symptoms and history were accorded no weight.

We do not mean to cast doubt upon the validity of the Regulation upon which the Secretary based his decision, but a fair interpretation of the Regulation itself, we think, permits recovery in this case. The Regulation is only a guide in the determination of whether to allow recovery based on a claim of hypertensive vascular disease; it does not inexorably insist in every instance upon specific findings of severe "end-organ involvement." Rather, the Regulation provides that *"Generally,* hypertensive disease does not cause severe loss of capacity until it becomes severe enough to cause significant abnormalities in one or more of the four main end-organs * * *." (Emphasis supplied.)

In this case the specialists to whom the Secretary referred Miss Heslep did not contradict, but generally confirmed Dr. Smith's opinion that Miss Heslep was suffering from "severe loss of capacity." Nor was there any intimation from the hearing examiner that the credibility of Miss Heslep or Mrs. Fuquay was open to doubt. The rejection of the claim was the product of an arbitrary and mechanical application of a regulation designed as a guide, not a rigid rule. This is not within the spirit of the Regulation or the statute on which it is based.

The judgment of the District Court is reversed and the case remanded for judgment in favor of the plaintiff.

Reversed and remanded.