Delbert R. FARMER, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 1194.

United States District Court, S. D. West Virginia, Huntington Division.

Sept. 28, 1970.

Robert W. Hensley, Bluefield, W. Va., for plaintiff.

W. Warren Upton, U. S. Atty., Charleston, W. Va., Leo J. Meisel, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205 (g) of the Social Security Act, 42 U.S. C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on November 14, 1969, awarded plaintiff a period of disability and disability insurance benefits, but this decision was reversed by the Appeals Council on February 26, 1970, which is the final decision of the Secretary. It holds that plaintiff is not entitled to the establishment of a period of disability insurance benefits under the provisions of the Act.[1]

The matter is now before the Court on the parties' cross-motions for summary judgment under Rule 56. The only issue before the Court is whether the aforementioned final decision of the Secretary is supported by substantial evidence.

The hearing examiner determined that beginning on August 28, 1949, the plaintiff was under a "disability" as defined by the Act both before and after the 1965 Amendments and that such disability has continued through the date of his decision. However, the Appeals Council reversed this decision, holding that the evidence failed to establish the existence of a disability on or prior to June 30, 1954, that would qualify the plaintiff for benefits regardless of which definition was applied. Determining which of these conflicting holdings is correct is crucial to this review.

The standard of review in actions of this nature is found in Section 205(g) of the Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the Courts are not to try the case *de novo*, and if the findings of the Secretary are supported by substantial evidence, the Courts are bound to accept them. Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1965); Underwood v. Ribicoff,

---

1. The term "disability" is defined in Sections 216(i) and 223 of the Social Security Act, as amended, to mean: "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

The 1968 Amendments to the Act imposed the additional requirement that "(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the Courts should surrender their "traditional functions," but that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the administrative finding is supported by substantial evidence and to see that the Administrative Agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962); Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965). In determining the meaning of "substantial evidence," the Courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, it is seen that the immediate task of this Court on this review is to determine whether the defendant's denial of plaintiff's claim is supported by substantial evidence.

Plaintiff was born August 25, 1924, is married and has seven children. He completed the third grade in school, cannot read and can only write his name. He alleges disability since 1949 from a chest and shoulder injury, ulcers, arthritis and mental disorders. His principal work experience has consisted of sporadic manual labor chiefly in the coal mines.

The plaintiff was hospitalized at Princeton Memorial Hospital from August 28, 1949, to September 11, 1949, as a result of a gunshot wound in the right chest area.[2] He left the hospital against the advice of his physician. He reentered the hospital on January 16, 1950, with a bronchial fistula, underwent a thoracoplasty and was discharged after six days.

On January 9, 1951, plaintiff was examined by Dr. F. C. Goodall for the Department of Welfare. He reported that two ribs were missing and the right upper lung was collapsed. His vision was found to be 20/25 in the right eye and 20/200 in the left eye. Dr. Goodall stated that plaintiff was "completely disabled for employment at this time" although he might be rehabilitated with refraction and retraining.

The only additional medical examination in the record which was performed prior to the expiration of the insured status was conducted by Dr. V. Kelly on February 16, 1953. His diagnosis was "Gunshot wound rt. chest with loss function 50% rt. lung and loss function rt. pectoral muscle." He further stated that plaintiff "is able to work at selected work, but not at heavy manual labor. Needs training for special work." Prognosis was "Stable—no chance further improvement."

█ The record contains numerous other medical reports, most of which are far removed from the critical time period, June 30, 1954, and can be given little or no retrospective application. They are only useful to the extent that they describe plaintiff's condition prior to June 30, 1954. Regardless of how severe plaintiff's impairments may be at this time, they cannot qualify him for disability benefits unless they were disabling within the meaning of the Act prior to June 30, 1954. Carter v. Celebrezze, 367 F.2d 382 (4th Cir. 1966). A brief summary of these reports will be sufficient for the purpose of this review.

1. In 1957, Dr. V. L. Kelly again examined plaintiff and stated that he was able to perform full-time "light work not requiring elevation of rt. arm."

---

**2.** There is a conflict of evidence as to whether the wound was self-inflicted or the result of an accident.

2. In 1957, Dr. Daniel Hale reported that plaintiff should not perform heavy labor, but could perform full-time "light work." Vision was found to be 20/30 in the right eye and 20/20 in the left eye.

3. In 1961, Dr. Joseph McCary reported that plaintiff was capable of performing light work.

4. In 1962, Dr. Richard Stovall reported that he could perform "any relatively light work" on a full-time basis.

5. In 1963, Dr. Stovall again examined plaintiff and reported that there were no restrictions imposed on him by his impairment and that he was able to work full time.

6. In 1964, Dr. W. M. Harloe reported that plaintiff was totally and permanently disabled, but he did state in a subsequent examination that he could perform "light work —only as tolerated" on a full-time basis.

7. In 1965, Dr. David Wayne, psychiatrist, reported severe psychological impairments which would preclude rehabilitation. (This diagnosis was made eleven years after the expiration of plaintiff's insured status and is, therefore, of little probative value.)

8. In 1965, Dr. O. J. Bailes, osteopath, reported that he should avoid any work requiring lifting, standing, "the use of two arms" or "thought." (He also failed to relate any of the impairments to a time when plaintiff met the insured status.)

9. In 1966, Dr. Harloe again stated that plaintiff was totally disabled.

10. In April 1966, plaintiff was admitted to the Huntington State Hospital because of alcoholism. At the time of admission, the attending physician, Dr. Querico Doronila, stated that he was "cooperative, clean and tidy. He denied hallucinations or delusions. Speech was relevant. He was oriented in all three spheres; memory was good for past and present events. Judgment and insight were impaired." He was released 5–20–66, and the doctor stated that he had "recovered from this period of intoxication and has received maximum benefit from hospitalization."

11. In 1969, Dr. James Shanklin stated that plaintiff was capable of performing "many of the less strenuous forms of work."

12. In 1969, Dr. Rasmussen stated that he was not capable of performing steady work beyond sedentary work levels, and estimated that over-all loss of capacity at that time was approximately 75–85%. He did not relate such loss of capacity to a period prior to the expiration of his insured status.

At the request of the hearing examiner, plaintiff's medical exhibits were examined by Dr. R. Earle Glendy, of Roanoke, Virginia, on October 9, 1969. He concluded that plaintiff's impairments *at that time* were severe. He estimated the onset of respiratory impairments in 1953, and the mental impairments in 1965 or "probably before." He further stated that plaintiff was "completely incompetent to engage in any gainful activity by reason of physical and mental impairments which will persist indefinitely."

■ On the basis of all the foregoing medical evidence and particularly the report of Dr. Glendy, the hearing examiner determined that plaintiff had been disabled since 1949. However, considering the entire record, the Appeals Council determined, and we agree, that the evidence fails to establish the claim asserted either under the pre-1965 definition or under the more liberal 1965 definition. Moreover, the plaintiff's work history subsequent to the alleged onset of disability in 1949 tends to refute his claim. It shows that his impairments did not prevent him from pursuing his usual

work through 1963. It is elemental that a claim for disability benefits involves consideration of the extent to which the claimant's functional capacity has been reduced by his impairments. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). *The mere presence of an impairment or condition is not sufficient to qualify for disability benefits.* Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962).

It appears that plaintiff's work has been sporadic and insubstantial for his entire vocational life with hardly any distinguishable characteristics either before or after 1949. The evidence fails to show that the injury in 1949 or any other impairment resulted in any significant diminution of plaintiff's work capacity at any time when he was still insured or in the several years thereafter. His earnings record clearly demonstrates that his work after 1949 was no less substantial than it was before. For example, the record discloses that following the alleged onset of disability (1949), plaintiff had the highest wage earnings in his life. His earnings for all the years prior to 1949 totalled only $3689, while from 1949 through 1963 his earnings totalled $5682. In 1956, he earned $1074 and in 1957, he earned $1119—two of the highest annual earnings posted in his entire earnings record. This tends to support the opinion of some of the examining doctors that much of his trouble was due to a lack of motivation for work, a symptom not uncommon to many in our present-day society. Another significant factor that should not be overlooked is that during this period from 1949 to 1963, plaintiff actually returned to his former work of hand loading coal. It is apparent that to whatever extent plaintiff was disabled in 1949, his functional capacity was not thereby perceptively reduced. In light of the preponderant medical evidence against total incapacity before June 30, 1954, and the evidence of substantial gainful activity subsequent thereto, plaintiff cannot be found entitled to benefits under the Act. Brown v. Celebrezze, 347 F.2d 227 (4th Cir. 1965); Abshire v. Gardner, 271 F.Supp. 927, 929 (S.D.W.

Va.1967), aff'd 381 F.2d 737 (4th Cir. 1967).

Having found that plaintiff was not sufficiently disabled to prevent his engaging in substantial gainful activity, in this case his former work, it is not necessary to determine whether or not he was prevented from working for any continuous period which has lasted or can be expected to last at least twelve months. It has long been established that the 1965 Amendments only altered the period of time that a disability, if established, must be likely to endure before the plaintiff was entitled to benefits—in short, they did not change the required severity of the physical or mental impairments constituting disability, only their duration. James v. Gardner, 384 F.2d 784 (4th Cir. 1967).

Therefore, considering all the medical evidence, vocational history and the testimony of plaintiff, we cannot in good conscience say that the Secretary's findings are not supported by substantial evidence. Indeed, we find they are. Accordingly, the defendant's motion for summary judgment must be granted and the plaintiff's like motion denied.