Harry **SELIG**, Plaintiff,

v.

Elliot L. **RICHARDSON**, Secretary of Health, Education and Welfare, Defendant.

No. 71 C 1574.

United States District Court, E. D. New York.

June 24, 1974.

**596**

Stuart J. Silverman, Rockville Center, N. Y., for plaintiff.

David G. Trager, U. S. Atty., E.D. N. Y., for defendant by George H. Weller, Asst. U. S. Atty.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action seeks review of a final decision of the defendant Secretary of Health, Education and Welfare ("H.E. W."), which denied plaintiff's application for disability insurance benefits under § 223(a) of the Social Security Act ("The Act"), 42 U.S.C. § 423(a). Defendant has moved for judgment on the pleadings on the basis of the certified administrative record and a memorandum of law.

## I.

The procedural history of this case may be briefly summarized. Plaintiff's application for disability insurance benefits was filed with the Bureau of Disability Insurance, Social Security Administration ("S.S.A."), on September 22, 1970, wherein he stated he had been unable to work as of 1967 due to a heart condition. The application was disallowed because plaintiff did not meet the earnings requirement of the Act. Plaintiff requested reconsideration, alleging that he had been disabled and unable to work due to his condition since 1958. Upon reconsideration S.S.A. determined on March 5, 1971, that plaintiff last met the Act's special earnings requirements on September 30, 1962, but again disallowed the claim because "medical evidence fails to indicate an impairment that was severe" as of September 30, 1962. Official Transcript at 69 (hereinafter "Tr. —").

Plaintiff thereafter requested a hearing before a hearing examiner of the Bureau of Hearings and Appeals, S.S.A., again alleging his total disability since 1958. The hearing was held August 20, 1971, and attended by plaintiff, represented by counsel who represents him here. In his decision of September 2, 1971, the hearing examiner concluded that although there was no doubt that plaintiff was disabled as of September 1967, "the medical evidence fails to indicate an impairment that was severe September 30, 1962, when claimant last met the earnings requirement." Tr. 15.

Plaintiff's request for review of the hearing examiner's action was timely filed, and on October 8, 1971, the Appeals Council, Bureau of Hearings and Appeals, found the decision of the hearing examiner to be correct, denied review, and left his decision standing as the final decision of the Secretary. 20 C.F.R. § 404.940.

Plaintiff timely filed this action on December 6, 1971, alleging his entitlement to benefits by having "substantially established" his "inability to engage in substancial [sic.] gainful activity as

of 1958." Plaintiff's Complaint, ¶¶ 14, 9. Before the case was brought to trial, plaintiff filed a motion for remand of the case to H.E.W. to take additional evidence that had become available after the Secretary's decision. On December 29, 1972, the court ordered the case remanded to H.E.W. pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).

After receiving plaintiff's additional evidence, the hearing examiner's decision of September 2, 1971, was affirmed by the Appeals Council, in a decision dated July 3, 1973, which was made a part of the original record filed here. Defendant's motion for judgment on the pleadings, F.R.Civ.P. 12(c), was made on January 11, 1974, and the court reserved decision. For the reasons which follow, the case must once again be remanded to H.E.W. to take further evidence.

## II.

The actual findings under review are those of the Appeals Council of July 3, 1973. In affirming the hearing examiner, its decision is based on findings, *inter alia*, that (1) the medical evidence fails to establish that the claimant had a significant heart or other impairment on or prior to September 30, 1962 which would have precluded the performance of vocational activity consistent with his age, education and work experience; (2) on and prior to September 30, 1962, the claimant retained the residual functional capacity to engage in one or more of his former jobs as well as in other managerial or clerical jobs which existed in significant numbers in the national economy; and (3) the claimant has no medically determinable impairment or impairments which became so severe on or before September 30, 1962 as to prevent him from engaging in substantial gainful activity.

These findings were based on evidence in the record which sets forth in some detail the circumstances leading to plaintiff's acknowledged present disability. Plaintiff was born in 1909, obtained a college degree, and thereafter worked as a salesman or actor until he entered the military service in 1942. He received a medical discharge in 1945, when it was determined that he was "permanently physically incapacitated for active military service." Tr. 118. During his military service, plaintiff frequently complained to medical officers about chest pains radiating to his left shoulder and down his left arm, but the final diagnosis upon discharge was essentially one of psychoneurosis. Tr. 101.

Plaintiff married in 1943 or 1944, but was unemployed, while in his mid-thirties, for six years following his discharge from the service. Between 1951 and 1958 he worked initially as an appliance store salesman and later as the store manager. He did not work again until 1967, when he worked for a short period of time. He worked for a few weeks in 1968 and as long again in 1969, and apparently has not worked at all since that time.

After his discharge plaintiff was treated for his ailments by various doctors, including, since 1954, Dr. Mordecai Zucker, who found plaintiff to be suffering from pain in his left arm and chest, and diagnosed it as a neurosis, Tr. 43, or tension anxiety, Tr. 70, 101, 120, 122. Dr. Zucker stated: "In 1957 this condition became so severe that I strongly advised him to cease all employment." Tr. 120. In 1967 and again in 1969, plaintiff suffered heart attacks which thereafter, and indisputably, left him totally unemployable. Tr. 15, 90. Several electrocardiograms taken during 1956–1962 apparently were within normal limits. Tr. 15. Even one taken after plaintiff's first heart attack was normal. Tr. 101. It was Dr. Zucker's opinion that although in reality he had been treating plaintiff for coronary artery disease only since 1967, Tr. 97, in retrospect, the chest pains earlier complained of were "indicative of angina pain," Tr. 74, "undoubtedly cardiac in origin, arising from progressive coronary sclerosis," Tr. 122, and amounted to "coronary artery disease." Tr. 120.

On April 28, 1969, the Board of Veterans Appeals issued a decision finding

that there was enough doubt about the matter to conclude that plaintiff's arteriosclerotic heart disease, although only first diagnosed in 1967 at the time of his heart attack, was incurred while he was in the military service, when manifestations indicative of such disease, i. e., the intermittent chest pains radiating down his arm, were complained of. Tr. 102.

Based on this evidence, and, for all that appears in the record, none to the contrary, the Appeals Council reasoned that even if the chest pains were of cardiac origin: (1) the evidence does not establish that during the period plaintiff met the income requirements, a cardiac abnormality existed which was demonstrable by medically acceptable clinical or diagnostic techniques, § 223(d)(3) of the Act, 42 U.S.C. § 423(d)(3),[1] Tr. 107; (2) the evidence does not establish that the pains occurred with such severity and frequency that they "could be expected to preclude the performance of at least light physical activities such as were involved in most of his former jobs," or in "numerous other light sales, clerical, and managerial jobs which existed in significant numbers in the national economy and for which the claimant was qualified," Tr. 107; and (3) Board of Veterans Appeals findings are not binding on H.E.W., 20 C.F.R. § 404.-1525, and the decision there, taking into account the 1967 heart attack, "does not serve to establish the existence of an impairment preventing all substantial gainful activity on or before September 30, 1962." Tr. 108.

## III.

■ Before turning to these arguments, some general observations are appropriate. Section 205(g) of the Act provides in pertinent part that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." The dis-

trict court has no authority to hear the case *de novo.* Zimbalist v. Richardson, 334 F.Supp. 1350, 1355 (E.D.N.Y.1971). The finality accorded the Secretary's findings extends not only to the evidentiary or basic facts, but also to ultimate facts drawn therefrom as inference or conclusion. Weir v. Richardson, 343 F. Supp. 353, 355 (S.D.Iowa 1972); Young v. Gardner, 259 F.Supp. 528, 531 (S.D. N.Y.1966).

■ Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619–620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); Universal Camera Corp. v. NLRB, 340 U.S. 474, 477–487, 71 S.Ct. 456, 95 L.Ed. 456 (1951); NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). It "must do more than create a suspicion of the existence of the fact to be established," NLRB v. Columbian Enameling, *supra*; Weir v. Richardson, *supra*; Johnson v. Richardson, 336 F.Supp. 390, 392 (E.D.Pa.1971). "It must be enough, if the trial were to a jury, to justify a refusal to direct a verdict when the conclusions sought to be drawn from it is one of fact for the jury." Johnson v. Richardson, *supra*. Thus, where there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings should be affirmed. Underwood v. Ribicoff, 298 F.2d 850, 851 (4 Cir. 1962).

■ It should also be noted that the credibility to be given to testimony of witnesses and the weight to be given to evidence are matters to be determined by the Secretary. Johnson v. Richardson, *supra*, 336 F.Supp. at 394; Mann v. Richardson, 323 F.Supp. 175, 179–180 (S.D.N.Y.1971); and conflicts in evidence are also matters to be resolved by

---

1. Section 223(d)(3) provides:
   "For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

him. Johnson v. Richardson, *supra.* Nevertheless, the court is not bound to accept the Secretary's conclusions of law. Where he has failed to employ the proper legal standard in making his determination his findings may not stand. Reading v. Richardson, 339 F.Supp. 295, 300 (E.D.Mo.1972).

■ Thus, despite the wide latitude given H.E.W. in administering this complex statute, there are limits beyond which judicial review functions to correct plain errors. Unfortunately, such errors do occur despite the procedural safeguards a claimant enjoys and despite the widely-recognized care and attention H.E.W. devotes to substantive claims.

### IV.

■ The Appeals Council's decision makes clear that in finding plaintiff's chest pain symptoms unsupported by clinical or laboratory findings, it was disregarding as support therefor his 1967 heart attack and the subsequent disability found by the hearing examiner, and affirming his conclusion that

"A medical condition which may have become disabling after the earnings requirement was last met, can not serve as a basis for qualifying under the disability provisions of the law." Tr. 15.

It is true that regardless of how severe an impairment becomes at a subsequent time, one is not entitled to a disability unless the impairment were disabling prior to expiration of one's insured status.[2] But it by no means follows from this that evidence bearing upon plaintiff's subsequent condition is necessarily irrelevant to the question of the existence of a prior disability. Numerous courts have held that such evidence is pertinent

in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.[3]

In Mann v. Richardson, *supra,* it was held that if latent subsequent impairments

can be related back so that in combination or totality with prior ailments they causally resulted in disability, they may properly be considered . . . . 323 F.Supp. at 177.

The problem has been especially acute where a claimant suffers from a disease difficult to diagnose. In such cases evidence of correct diagnosis subsequent to expiration of the insured status has been considered, and the Secretary's argument to the contrary rejected.[4] On

2. Farmer v. Richardson, 320 F.Supp. 421, 423 (S.D.W.Va.1970); Moore v. Cohen, 305 F.Supp. 1197, 1200 (S.D.W.Va.1968). *See* Henry v. Gardner, 381 F.2d 191, 195 (6 Cir.), cert. denied, 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967), rehearing denied, 389 U.S. 1060, 88 S.Ct. 797, 19 L.Ed.2d 864 (1968); Piper v. Richardson, 315 F. Supp. 234, 237 (W.D.Pa.1970).

3. Carnevale v. Gardner, 393 F.2d 889, 890 (2 Cir. 1968); *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 41–42 (2 Cir. 1972); Medina v. Sec. of HEW, 372 F.Supp. 465 (D.P.R. Nov. 1, 1973). *See* Roman v. Secretary of Health, Education and Welfare, 355 F.Supp. 646, 650 (D.P.R. 1972); Robinson v. Ribicoff, 197 F.Supp. 28, 30–31 (E.D.Ark.1961). *Cf.* Halliday v. United States, 315 U.S. 94, 98, 62 S.Ct. 438, 86 L.Ed. 711 (1942). *But see* Bol

v. Richardson, CCH Unemp. Ins. Rep. ¶ 17,219 (N.D.Ind. April 3, 1973) (transfer binder); Everett v. Secretary of Health, Education and Welfare, 412 F.2d 842, 843 (4 Cir. 1969); Stolz v. Ribicoff, CCH Unemp. Ins. Rep. ¶ 12,427.239 (E.D.Wis. Feb. 26, 1962).

4. Moore v. Finch, 418 F.2d 1224, 1226 (4 Cir. 1969) (psychoneurotic anxiety reaction); Berven v. Gardner, 414 F.2d 857, 861 (8 Cir. 1969) (degenerative cerebral disease); Murphy v. Gardner, 379 F.2d 1, 7 (8 Cir. 1967) (cancer); Miller v. Weinberger, 367 F.Supp. 456, 458 (E.D.Tenn.1973) (cardio-vascular disease and hypertension); Tidwell v. Richardson, CCH Unemp. Ins. Rep. ¶ 12,429.5577 (N.D.Ga. Nov. 5, 1971) (brain tumor, 4 years between eligibility for benefits and correct diagnosis); Howington v. Richardson, CCH Unemp. Ins. Rep. ¶ 12,429.5577 (S.D.W.Va. Sept. 3, 1971) (se-

the other hand, such subsequent diagnostic evidence has often been of little probative value because of intervening developments in the claimant's medical or work history. Thus, benefits have been disallowed and such evidence disregarded where, in the interim, there was a remission in the disease or the claimant was otherwise unable to demonstrate the lack of employment capability.[5]

However, none of the cases cited really disagrees with the general proposition that such subsequent diagnostic evidence may be considered as an aid in determining the claimant's condition while still in an insured status. Nor do they do violence to the proposition that the disability must be found to have actually existed while insured; just the mere onset of the eventually disabling disease or condition at that time is not enough. O'Brien v. Richardson, CCH Unemp. Ins. Rep. ¶ 12,429.5575 (E.D.Pa. Aug. 26, 1971).

The legislative history of the 1967 Amendments to the Act, which clarified the nature of the evidence that may be used to demonstrate disability, § 223(d)(3), 42 U.S.C. § 423(d)(3), also suggests no contrary conclusion. The purpose behind the demonstrability requirement is to ensure that payments are not made solely on the basis of unsupported conclusions whose reliability is questionable.[6] In 1967 Congress tightened considerably the statutory definition of disability, and in the process added the demonstrability requirement out of concern, *inter alia*, that some courts were not requiring the existence or severity of impairments to be demonstrable by such clinical and laboratory techniques. The legislative history makes plain that the redefinition was in large part prompted by rising costs in the disability insurance program.[7]

■ That medical evidence obtained subsequent to expiration of the insured status might, in certain circumstances, be probative, persuasive, or compelling evidence on the claimant's side seems beyond question. Its consideration is plainly not precluded by the statute, either literally or with reference to its underlying purpose, and is, in fact, in harmony with the remedial nature of the statute, which requires its broad construction and liberal application, Gold v. Secretary of Health, Education and Welfare, *supra* note 3, 463 F.2d at 41; Haberman v. Finch, 418 F.2d 664, 666–667 (2 Cir. 1969). Finally, any other construction of the law would seem terribly unfair to a claimant, such as plaintiff in this case, who, having endured several years of misdiagnosis, would now find that although medically demonstrable evidence, possibly probative of a pre-existing impairment, is at last available, it is only available in a classic catch-22 sense: because of the impairment, it has been years since the claimant has worked and met the earnings requirement, making the evidence useless as a matter of law.

In this case, the largely uncontradicted evidence is that plaintiff was suffering in 1958 from the same disease which the hearing examiner concluded there is "no doubt" disabled him as of September 1967. Tr. 15. The chest pains were a constant source of complaint by plain-

vere anxiety neurosis). *See* Reese v. Richardson, CCH Unemp. Ins. Rep. ¶ 12,429.-5577 (S.D.Dhio May 17, 1971) (multiple sclerosis, correct diagnosis seven years after date disability found); Music v. Ribicoff, 195 F.Supp. 907, 910–911 (E.D.Ky.1961) (arthritis). *See generally* CCH Unemp. Ins. Rep. ¶¶ 12,429.5575, 12,429.5577.

5. DeNafo v. Finch, 436 F.2d 737, 739 (3 Cir. 1971) (arteriosclerotic coronary thrombosis); Patton v. Finch, 305 F.Supp. 810, 815 (W.D.N.C.1969) (multiple sclerosis); Wieszczak v. Secretary of Health, Education

and Welfare, 335 F.Supp. 1146, 1149 (D. Conn.1971) (multiple sclerosis); Cole v. Richardson, CCH Unemp. Ins. Rep. ¶ 12,429.-5577 (E.D.Ky. Sept. 23, 1971).

6. *See* Kirkland v. Weinberger, 480 F.2d 46, 49 n. 2 (5 Cir.), cert. denied, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973); H.R. Rep.No. 544, 90th Cong., 1st Sess. (1967), 2 U.S.Code Cong. & Ad.News, pp. 2880–2883 (1967).

7. *See id.* at 2880.

tiff on his visits over the years to Dr. Zucker. Tr. 121. And while not binding here, the Board of Veterans Appeals' similar conclusion is not to be ignored. Nor do the normal electrocardiograms present much, if any, contrary evidence. There was at least one "normal" electrocardiogram following plaintiff's first major heart attack and acknowledged disability. Moreover, plaintiff's own citation to medical authorities, which the Council did not attempt to refute, points to data suggesting that normal test results can occur in abnormal patients 25–33% of the time. Tr. 7. Nor is there any indication that the decision was based upon the type of electrocardiogram exercise test normally indicated in cases of this type, § 4.00 D, E and § 4.07, Appendix to Subpart P, S.S.A. Regulations (Cardiovascular System).

However, it is argued that the decision below must be affirmed because plaintiff has failed to establish that the impairment was of the requisite severity and frequency to establish an inability to engage in substantial gainful activity. Standing squarely uncontradicted on this point is plaintiff's personal physician's considered opinion that as of 1957 plaintiff should "cease all employment." Plaintiff appears to have accepted this opinion and did not work for about ten years thereafter. Then when he did go to work he found he had to quit, and he suffered a heart attack soon after. This objective verification of his true lack of employability is only a part of the evidence which consistently tends to show that plaintiff leads an extraordinarily subdued life, is taken care of by his wife, and exerts himself as little as possible. Tr. 18–19. While admittedly this evidence tends to reveal more of how severe his disability is at present than of how severe it was prior to September 30, 1962, plaintiff was asked no questions by the hearing examiner about his daily activities prior to his last insured date.

■ The ultimate burden of persuasion to establish inability to engage in substantial gainful activity is on plaintiff, Franklin v. Secretary of Health,

Education and Welfare, 393 F.2d 640, 642 (2 Cir. 1968). "However, it does not follow that the court is bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer." Kerner v. Flemming, 283 F.2d 916, 922 (2 Cir. 1960). See CCH Unemp. Ins. Rep. ¶¶ 12,429.552, 12,427.223. In such circumstances, it is appropriate to remand the case to S.S.A. for further development of evidence if the record does not contain sufficient evidence to determine the factual issues raised. Kerner v. Flemming, *supra*.

■ While it is true that expert medical opinion on a claimant's inability to engage in such activity is not entitled to conclusive weight and is not necessarily binding on the hearing examiner, 20 C.F.R. § 404.1526; Dillon v. Celebrezze, 345 F.2d 753, 755 (4 Cir. 1965); Weaver v. Richardson, 359 F.Supp. 1105, 1107 (E.D.Mich.1973); Brock v. Finch, 313 F.Supp. 1187, 1192 (D.Kan.1970), and such opinion alone cannot support a finding of employability, Pergande v. Secretary of Health, Education & Welfare, 351 F.Supp. 377, 383 (W.D.Wis. 1972); it is entitled to substantial weight, Heslep v. Celebrezze, 356 F.2d 891 (4 Cir. 1966), or great weight if not contradicted, Laws v. Celebrezze, 368 F.2d 640, 644 (4 Cir. 1966); Randall v. Flemming, 192 F.Supp. 111, 128 (W.D. Mich.1961), and a contrary finding is reversible error in the absence of countervailing substantial evidence. Kennedy v. Finch, 321 F.Supp. 303, 306 (N.D. Fla.1970).

■ Moreover, once it is determined that an impairment exists, the opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once. Tritt v. Richardson, 320 F.Supp. 871, 873 (W.D.Va.1970), especially where he has treated the claimant over a substantial period of time. Robinson v. Richardson, 360 F.Supp. 243, 250 (E.D.N.Y.1973); Teague v. Gardner, 281 F.Supp. 43, 48 (E.D.Tenn.

1968). Such opinions should be viewed as

> "essential to an obvious interrelation of the four elements of proof the fact finder must recognize in determining a claimant's ability or inability to engage in any substantial gainful activity. . . . This interrelation includes (1) the objective medical facts, which are the clinical findings of treating or examining physicians divorced from their expert judgments or opinion as to the significance of these clinical findings, (2) the diagnoses and expert medical opinions of the treating and examining physicians on subsidiary questions of fact, (3) the subjective evidence of pain and disability as testified to by claimant, and (4) claimant's educational background, work history and present age." Mounts v. Finch, 304 F.Supp. 910, 917 (S.D.W.Va.1969) (citing Underwood v. Ribicoff, *supra*).

Against this, defendant points to the Appeals Council's reliance on evidence that plaintiff sought medical attention only infrequently during the period 1958–1967. This amounts to a rather weak negative contention that evidence of lack of medical treatment is evidence of lack of a disabling impairment. Yet the record discloses that the visits were to the same doctor who recommended to plaintiff that he not work, Tr. 121–22, were regular, and involved continued observation of plaintiff's principal complaint. Nor is there any suggestion that Dr. Zucker changed his recommendation concerning employment by plaintiff.

▮ While it is possible that subsequent objective medical evidence is not *highly* probative of plaintiff's condition in 1962, it is *some* evidence tending to objectively verify previously subjective complaints. Whether, on the whole record the result would be different from that reached below is not now decided. For the present, the court cannot escape the impression that the decision below fails to adequately assess the probative weight (or lack thereof) of the post-1962 medical evidence favorable to plaintiff. Certainly the Appeals Council had no qualms about ascribing significance to such evidence to the extent it was unfavorable to him. Tr. 107.

It has been held that the hearing examiner's duty under the Act is to *fully* and *fairly* develop the facts. Richardson v. Perales, 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Sellars v. Secretary, Department of Health, Education and Welfare, 458 F.2d 984, 986 (8 Cir. 1972). In *Sellars* the claimant, as here, had lost below for failure to show that her present disability existed as of the expiration of her insured status. There, as here, no contradiction of opinion testimony as to disability appeared in the record, and, at the hearing, "the examiner did not inquire of the claimant as to her disability prior to [the expiration date]," but rather into "her present condition only." Here, the hearing examiner's two or three wholly general questions on plaintiff's prior condition produced no evidence unfavorable to him, Tr. 40–41, and the useful objective questions about his daily activities, directed only to the present, were equally favorable to him. Tr. 33, 41, 42, 44. In *Sellars*, the court remanded the case, noting that medical testimony and reports ought to be directd to the duration of the claimant's disability, and that:

> [i]t should be a simple process for the claimant, who is now represented by competent counsel, to fully develop medical opinion as to whether or not she was actually disabled during the critical period at issue. . . . Once all of the facts are known and set forth on a record that is fully and fairly developed, the examiner and Appeals Council and the district court can properly review the evidence to determine whether or not the claimant has established her case. 458 F.2d at 986.

▮ The court is of the opinion that, in light of the foregoing, the same sort of remand is appropriate and will be useful here. It should be no more than obvious that explanatory testimony

of Dr. Zucker would be preferable to a cryptic letter expressing the rather extreme judgment that claimant cease all employment. As much again could be said for testimony of any other physician whose more recent diagnosis of plaintiff could have a bearing on the chronic nature of plaintiff's past condition. The weight to be given such evidence is for the Secretary, but it must at least be considered for possible relevance.

The court holds only that because of the substantial possibility that there has been a misapplication of the proper legal standards to this case, and because of the fact that plaintiff has raised a "serious question" concerning the existence of his disability as of September 30, 1962, while the record does not contain sufficient evidence to adequately resolve this question, an additional hearing to develop fully and fairly the facts relevant to this case is necessary and appropriate.

The case is remanded to the Secretary to take further evidence.

So ordered.