Eleanor A. STANLEY, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of
Health and Human Resources,
Defendant.

No. 80 C 2939.

United States District Court,
E. D. New York.

Dec. 15, 1981.

Eleanor A. Stanley, pro se.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y. (Laura R. Handman, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff *pro se* brought this action under Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final determination of defendant, which denied plaintiff's application for a period of disability and disability insurance benefits. Plaintiff met the special earning requirements of the Act in November 1972, the date when plaintiff claims her inability to work began, and continued to meet them through December 31, 1975, but not thereafter. Defendant moves for judgment on the pleadings; plaintiff cross-moves for summary judgment.

Plaintiff alleges disability due to eosinophilia (parasitic infestation) contracted during a tour of duty as secretary to the United States Ambassador to India, as well as related illnesses which are rooted in the eosinophilia, and a resulting psychoneurotic anxiety state. After a hearing, the Administrative Law Judge (ALJ) determined that plaintiff was not under a disability prior to the expiration of her insured status on December 31, 1975. That decision became the final decision of the Secretary when it was approved by the Appeals Council on August 25, 1980.

At the time of the hearing plaintiff was fifty-six years old. She is unmarried. Plaintiff was employed as a secretary at several law firms between 1941–63; she then became the personal secretary to Kenneth Keating in 1964. She continued to be his secretary while he was in private law practice from 1964–66, while he served on the bench of the New York Court of Ap-

peals from 1966–69, and while he was United States Ambassador to India from 1969–72. She has been unemployed since the onset of her illness in 1972.

The medical evidence adduced at the hearing may be summarized as follows. Prior to the alleged onset of disability, in March of 1971, plaintiff was examined by physicians in India. Her chest x-rays were normal as to cardiac size, the domes of the diaphragm, and the lung parenchyma. Plaintiff was found to have varicose veins, and a uterus somewhat enlarged and irregularly shaped. After returning to the United States, in June 1971, plaintiff was examined by Dr. Arthur A. Becker, who diagnosed uterine leiomyomata with secondary menorrhagia. He recommended that plaintiff undergo dilation and curettage, plus a total abdominal hysterectomy and bilateral salpingo-oophorectomy, which plaintiff did on June 14, 1971. She had an uncomplicated post-operative course and was discharged on the eighth post-operative day. She was cleared for overseas duty as of August 23, 1971.

On October 16, 1972 plaintiff underwent a state department medical examination for the foreign service which diagnosed eosinophilia, (a disease rarely found in the United States), R/O intestinal parasites, a hysterectomy in 1971, and post-varicose vein stripping. On October 18, 1972 the eosinophilia had reached 28%; however, laboratory tests revealed no identifiable parasites.

Plaintiff complained of severe bifrontal headaches, weakness, dizziness, fatigue, various stomach disorders, chills and hot flashes, and a general inability to sustain activity. During the next three years, while plaintiff continued to meet the special earning requirements of the Act, plaintiff underwent repeated and exhaustive laboratory tests and examinations by a variety of tropical disease and other diagnostic specialists to whom she was referred by the state or by her physicians. See reports of Dr. B. H. Kean, Dr. L. B. Klauber, Dr. Morton Coleman, Dr. Sanford N. Richman, Dr. D. W. Hoskins, Dr. Martin Barandes, Dr. Thomas C. Guthrie, Dr. George Stassa.

The examinations, including stool studies, blood counts, chemical examinations of the blood, films for parasites, intravenous pyelogram, electro-encephalogram, x-rays of the spine, chest, abdomen, and gall bladder, bone marrow studies, liver and spleen scan, thyroid evaluation, and serum electrophoresis, revealed a gradually decreasing level of persisting eosinophilia, but were otherwise essentially uninformative in terms of a definitive diagnosis. In a letter of February 13, 1973, Dr. Hoskins reported that plaintiff's eosinophilia had never adequately been explained by these tests although her complained-of disabilities were unabated. Plaintiff continued to complain of subjective symptoms such as severe headaches, fatigue and general weakness, extreme variations in body temperature, sweating, nausea, anorexia, diarrhea, and the inability to concentrate.

In a letter of November 8, 1973, Dr. Kean expressed frustration at his sense that the doctors were "missing something" but admitted he was at a loss and "not prepared to do any more." (Tr. at 201). Plaintiff insisted that she still did not feel well enough to do anything.

On August 11, 1976 plaintiff was re-evaluated by another specialist chosen by the State Department, Dr. Joel S. Gitlin. Dr. Gitlin diagnosed tropical eosinophilia of unknown etiology, and an accompanying resultant depression. He concluded that she had contracted the disease while serving in India. He noted that there was no specific explanation for the severe symptoms complained of, but that the onset of her illness and disability had been clear-cut, and predated the appearance of profound eosinophilia in 1972.

Dr. Gitlin referred plaintiff to still more specialists who performed another battery of tests upon her, including skin and deltoid muscle biopsies on September 21, 1976, in an unsuccessful attempt to reach a definitive diagnosis. These tests again failed to explain plaintiff's subjective symptoms. However, Dr. Gitlin concluded that plaintiff should receive "the benefit of the doubt." (Tr. at 218.)

In a report of November 12, 1977, Dr. Gitlin stated that plaintiff's level of eosinophilia, which was noted in only one out of five office visits, had dropped to 7%, but that plaintiff's complaints continued. In his view, these severe subjective complaints were out of proportion to the meager physical, laboratory, roentgenologic and histologic findings; he therefore considered an underlying depressive disorder as the major cause of her disability, which in his view was total. He advised plaintiff to pursue psychotherapy. She began treatment with Dr. Samuel C. Karlan in February 1978.

In a letter of July 26, 1979, Dr. Karlan wrote that, despite attempts at medication and continuing psychotherapy, plaintiff's condition was unimproved. In fact she complained that her symptoms had grown more severe than ever. He opined that whether these symptoms (headaches, pain in the limbs, weakness, chills, difficulty in focusing her eyes) were physical due to the persistent eosinophilia, or psychosomatic due to the resultant severe psychoneurosis anxiety state, plaintiff was totally and permanently disabled. She was, he believed, incapable of working. Dr. Karlan testified in his report of November 26, 1979 and in person at the hearing that plaintiff's original eosinophilia precipitated her current severe anxiety state.

On September 19, 1979 plaintiff was consultatively examined by another psychiatrist, Dr. David E. Lehine, who diagnosed plaintiff as in a depressive state, prognosis guarded.

After a full hearing, at which plaintiff appeared *pro se*, the ALJ found that plaintiff has eosinophilia of undetermined origin, and a psychoneurotic anxiety state, the existence of which is not documented on or before December 31, 1975. He further found that claimant did not have any impairment or impairments which significantly limited the ability to perform basic work-related functions on or before December 31, 1975; therefore, she did not have a severe impairment and was not under a disability within the period she was insured for benefits under the Act. 42 U.S.C. § 423(d)(2)(A).

The factual determinations of the defendant are conclusive unless they are unsupported by substantial evidence or are based upon a legal error. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *see also* 42 U.S.C. § 405(g). The ALJ's decision in this case is clearly supported by substantial evidence; however, the decision is reversed and remanded for further findings because it may have been based on a mistake of law.

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In this case the court does not find that there is insufficient evidence to support the ALJ's denial of disability benefits to the plaintiff. Although plaintiff has complained throughout of the severe subjective symptoms described above, the clinical and laboratory findings in no way substantiate or explain those complaints. In fact, the objective evidence of record within plaintiff's period of coverage has established only the presence of profound eosinophilia, which does not ordinarily result in such severe symptoms and is not one of the disabling impairments listed in 20 C.F.R. Appendix I. Without more, a diagnosis of profound eosinophilia does not require the ALJ to conclude that plaintiff is disabled within the meaning of the Act.

Conversely, however, the dearth of additional and conclusive clinical and laboratory findings does not absolutely preclude a finding of disability since a physical or mental impairment " 'does not cease to exist merely because it is difficult of proof.' " *Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir. 1975), *quoting Celebrezze v. Warren*, 339 F.2d 833 (10th Cir. 1964). Thus, when, as in the instant case, there has been a medical determination (profound eosinophilia) and expert opinion by treating physicians corroborates plaintiff's claim of disability despite the meager clinical record, the ALJ is free to accept the expert opinion at face value as the basis for a determination of disability. However, the ALJ is not

bound to do so, and may reject expert opinion where it is contradicted by substantial evidence. *See Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir. 1981). Clearly, then, it was for the ALJ to evaluate and resolve the conflicting medical evidence in this case, *see Selig v. Richardson*, 379 F.Supp. 594 (E.D.N.Y.1974), and the ALJ could properly consider and reject the physicians' testimony on the basis of the other negative medical findings.

It is also settled, however, that in determining disability, the fact finder is bound to consider both the objective medical evidence and all subjective factors. *See, e.g., Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978). Indeed, claims of subjective pain and, presumably, other subjective symptoms, if credited, may serve to establish disability even if unsupported by clinical or other "objective" findings. *See, e.g., Marcus v. Califano, supra* at 27–28. It therefore has been held to be reversible error to fail to consider subjective symptoms in determining disability. *Id., see also Northcutt v. Califano*, 581 F.2d 164, 166–67 (8th Cir. 1978). Thus, although the ALJ was free to disbelieve plaintiff's testimony concerning her subjective symptoms, he was also free to credit it despite the negative findings, and to base upon his finding of credibility a determination of disability. It is not clear to this court that the ALJ correctly applied this legal standard in the instant case. Indeed, the wording of his decision suggests that he did not.

In his opinion, the ALJ acknowledged the existence of plaintiff's complaints but made no express findings as to her credibility or lack thereof. After carefully rehearsing the medical evidence of record, the ALJ noted that "[n]umerous documents in relation to claimant's physical condition before December 31, 1975 do not provide objective findings to establish any significant medically determinable impairment of basic work-related activities." Thereupon the ALJ concluded that "[t]herefore, *claimant cannot be found to have had any severe impairment,* nor to have been under a disability on or before December 31, 1975, the

date she was last insured for disability benefits." (Tr. at 32, emphasis added.) This court is therefore unable to determine from the decision as written whether the ALJ weighed plaintiff's demeanor and the credibility of her testimony against the objective medical evidence and deliberately rejected her claim of disability or whether the ALJ mistakenly believed that the absence of objective corroboration of her subjective symptoms precluded a finding of disability.

Accordingly, defendant's motion for judgment on the pleadings and plaintiff's cross-motion for summary judgment are denied. Defendant's denial of disability benefits to the plaintiff is reversed and the case is remanded to the ALJ for findings consistent with this opinion within 120 days. So ordered.